# Staunton

## Atlantic Life Insurance Company v. Joshua Wright Ring.

September 11, 1936.

Present, Campbell, C. J., and Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Cocke, Hazlegrove & Shackelford* and *A. B. Scott*, for the appellant.

*Woods, Chitwood, Coxe & Rogers* and *Leonard G. Muse*, for the appellee.

GREGORY, J., delivered the opinion of the court.

This cause was submitted upon bill and answer. A decree was entered denying the complainant insurance company the right to set-off against its obligation due the defendant a debt of some $9,000, due by the defendant to the complainant.

In 1920 the insurance company issued to Ring a $25,000 life insurance policy to which was attached a supplemental agreement whereby the insurance company agreed that if Ring shall furnish satisfactory proof that he has become totally and permanently disabled then it shall continue the contract by waiving subsequent premiums during the continuance of his disability and pay immediately to him $250

each and every month during the life and continued disability of Ring.

In 1932 Ring claimed to be totally disabled and entitled to the benefits of the disability provisions of the policy. The insurance company denied that he was entitled to such benefits and in November, 1933, he entered his action at law against the insurance company for $5,303.75, with interest, which represented seventeen monthly instalments of $250 each and the residue of said amount representing the 1933 premium, which had been paid by Ring who claimed that it had been wrongfully required of him.

The trial of the case was had in April, 1934, and resulted in a judgment in favor of Ring for $3,803.75, the jury having fixed the date of the inception of the disability benefits as of January 21, 1933, instead of April 19, 1932, as claimed by Ring.

Some time prior to the trial Ring had become indebted to the insurance company in the sum of some $9,000, with interest. This indebtedness was due and secured by a deed of trust on real estate in Johnson City, Tennessee. Ring's indebtedness grew out of his assumption and agreement of May 6, 1929, to pay a debt secured upon said property due the insurance company.

On August 30, 1933, Ring was duly adjudicated a bankrupt and received his discharge in bankruptcy on January 20, 1934. In his schedule of assets he listed as a part thereof his claim for disability benefits under the said contract of insurance aggregating some $4,000 in all and at the same time he claimed these assets as exempt in bankruptcy from the claims of creditors under section 4219 of the Code of Virginia. Subsequently, in accordance with the report of the trustee in bankruptcy, the referee by order entered on October 2, 1933, granted said exemption and set apart the disability benefits to Ring. The indebtedness of Ring to the insurance company was scheduled in the bankruptcy proceedings.

The correct determination of his case depends upon whether or not the exemption contained in section 4219 of

the Code may be applied. If it may be applied to the facts in this case, then the decree is right and should be affirmed. If on the other hand it should not be applied, then the decree must be reversed.

The lower court held that the exemption statute applied and that the disability payments were exempt from the claims of creditors and also that the obligation of Ring to the insurance company could not be set off against them.

The language of the statute, section 4219, is as follows: "The payments in weekly or monthly instalments to the holder of any policy of insurance in any accident company, sick benefit company, or any company of like kind, shall not be subject to the lien of any attachment, garnishment proceeding, writ of *fieri facias*, or to levy or distress in any manner, for any debt due by the holder of such policy."

The court in the decree allowed the premium of $1,053.75, which was paid by Ring to the insurance company, to be set off against Ring's indebtedness due the insurance company. The correctness of this ruling is conceded by counsel for Ring in their brief and we give no further consideration to that item.

The position of the insurance company is that it has the right to the set-off unaffected by the subsequent bankruptcy of Ring and unaffected by Code, section 4219; that to permit Ring to enforce the collection of disability benefits against it during his lifetime irrespective of and without regard to his indebtedness to the insurance company "will forever prevent your petitioner from exercising rights to which it is justly entitled, do your petitioner irreparable and permanent injury, cause it irredeemable loss, and prevent the exercise of rights having abundantly their foundation in equity and good conscience."

The position of Ring may be summarized thus: That the disability payments accruing under the policy cannot be set off by the insurance company against his indebtedness to it because they are exempt under Code, section 4219, from the claims of creditors, and also because the final order of the bankruptcy court from which no appeal was sought set them

aside as exempt and that order is *res adjudicata* as to the insurance company.

The insurance company in reply contends that the statute (Code, section 4219) has no application here because it is not "any accident company, sick benefit company, or any company of like kind," but that it is an ordinary old line life insurance company and that the policy here involved is simply an old line life insurance contract and further that it is not seeking to subject the disability benefit payments "to the lien of any attachment, garnishment proceedings, writ of *fieri facias*, or to levy or distress in any manner, for any debt due by the holder of such policy," but it is simply seeking to set off Ring's indebtedness to it against these payments; that the statute in express terms does not deny to it the right of set-off under such circumstances and not having expressly forbidden the set-off the statute should not be applied and the set-off should be allowed.

From our view of the case the determinative point is the applicability of Code, section 4219. The determination of the effect of Ring's bankruptcy and whether the referee's order is *res adjudicata* is not necessary inasmuch as we place our decision upon the application of the statute. This statute (section 4219) has never been before us for construction until now.

The language of the statute, "payments in weekly or monthly instalments to the holder of any policy of insurance in any accident company, sick benefit company or any company of like kind" means any insurance company which pays accident or sick benefits. Any insurance company which pays such benefits is certainly within the terms "company of like kind" although it may be an ordinary life company. The object and purpose of the contracts are the same whether the benefits are provided by a supplementary contract in conjunction with a life insurance policy, or a sick benefit or accident policy. Any attempt to draw a distinction in the application of the statute between such contracts merely results in confusion and contradiction. The exemption statute applies to each with equal force.

We are told that the statute in question was enacted in 1906 and that the insurance companies did not begin writing the supplemental agreements providing payments for the total and permanent disability of the policy holder until 1920 and therefore the legislature in enacting the statute could not have intended that the statute would apply to such a provision. We think counsel for Ring sufficiently answer this argument when they say in their brief that the company may not have written this type of contract when the statute was enacted yet when, by later changes in its life contracts, it launched into this new field and added the provision for accident and sick benefits, it thereby brought itself under the statute and to that extent, at least, it became a health and accident company or a "company of like kind."

The insurance company asserts that it is not seeking to subject the payments "to the lien of any judgment, garnishment proceedings, writ of *fieri facias*, or to levy or distress in any manner" and for this reason the statute has no application. In other words the statute does not prohibit in express terms the application of a set-off to such payments.

We are of opinion that the legislative intent was to exempt such payments or benefits to one entitled thereto from all claims of creditors. The legislative purpose of this statute was to protect from the claims of creditors such a policy holder who might be overtaken by accident or sickness and who has become entitled to benefit payments and thus likely prevent him and his family from becoming an object of public charity. While the statute does not in express terms mention "set-off" along with "the lien of a judgment" etc., yet it must be remembered that such statutes being remedial they should have a liberal construction in order that the legislative intent and purpose may be accomplished. The exemption of such payments from set-off finds strong support in the text books and in decided cases. There are few cases to the contrary.

In 24 R. C. L., 815, the general rule of construction to which there are few exceptions is stated thus:

*"Actions to Recover Exempt Property.*—Exemption privileges allowed by statute are to be liberally construed, and a debtor should not be deprived thereof through a technical following of statutes pertaining to pleading. Upon this principle the courts, as a general rule, decline to allow a set-off against claims arising out of exempt property; and this is true notwithstanding the fact that there is no express provision protecting exempt property from the right of set-off. This interpretation given to the exemption statutes is not in all cases the one which a literal following of its provisions would seem to require, but force and effect are sought to be given to the obvious legislative intent, and the whole spirit of these acts is such that it was intended to protect the exempt property from all manner of coercive process of the law, and not merely to protect the earnings of the debtor and other exempt property from seizure by means of the processes technically known as attachment, execution or garnishment, but to preserve them for the benefit of his family against any appropriation for the payment of his debts not authorized by law to which he does not consent. To allow a set-off would in most cases result in a palpable evasion of the law. The general rule has been applied in actions to recover for the wrongful taking or detaining of exempt property; to recover for wrongful conversion of exempt property; and to recover the sale price of such property. Likewise in an action for exempt wages due from the defendant he cannot counterclaim a debt due from the plaintiff to him, although the counterclaim comes within the letter of the statute. In some jurisdictions this rule is limited to those counterclaims which arise out of distinct and independent transactions, and does not apply to a recoupment which springs out of the contract relations between the parties. The general rule is not universally applied and it is held by some very respectable authority that the right of set-off is not subordinate to the right of exemption from execution, and that a defendant may interpose as a counterclaim or set-off a debt owing to him by the claimant in an action to recover exempt property. The reason assigned for this view is that exemption statutes pro-

vide for exemption from levy and sale only and in no wise affect the rights of parties litigant."

See also, 25 C. J., page 128, which is substantially to the same effect.

Numerous cases are cited to sustain the text in both Ruling Case Law and Corpus Juris. Many of them are referred to in the briefs and we have examined them with considerable care. A majority of the courts in the various jurisdictions have established the rule that statutes providing for exemptions are to be liberally construed in order to accomplish the purpose of such statutes and that the courts generally decline to allow a set-off against exempt property or against claims arising out of such property. This seems to be true even though "there is no express provision protecting exempt property from the right of set-off."

In *Collier* v. *Murphy*, 90 Tenn. 300, 16 S. W. 465, 466, 25 Am. St. Rep. 698, the plaintiff brought suit for his wages. The defendant sought a judgment against the plaintiff and relied upon it as a set-off against the claim of the latter. The plaintiff claimed his wages as exempt under the Tennessee statute and that his debt therefore was not subject to set-off. The Supreme Court of Tennessee held that the judgment of the defendant would not be allowed as a set-off to the plaintiff's claim for wages because his wages were exempt; that exemption statutes are entitled to liberal construction; that the manifest purpose of the legislature was to exempt wages of a laboring man from any kind of coercive process of the law; that while the language of the statute only protects such wages from "execution, attachment, or garnishment" yet the spirit of the statute is that such wages are not to be subjected to any legal seizure and that the defendant's judgment is declined as a set-off even though "set-off" is not mentioned in the statute. The court concluded that to subject the plaintiff's claim to wages to a set-off of the kind here asserted would be to subject wages exempt under the statute to a species of legal seizure.

In *Bradley* v. *Earle*, 22 N. D. 139, 132 N. W. 660, 42 L. R. A. (N. S.) 575, Ann. Cas. 1914A, 1181, the plaintiff

brought suit for wages due him which were exempt under a statute but the defendant filed a counterclaim which grew out of his purchase of a note made by the plaintiff and which was more than sufficient to satisfy the wages of the plaintiff. The North Dakota Supreme Court was of opinion that the counterclaim against the plaintiff's wages should not be allowed. There the language of the statute is "from attachment, *mesne* process, and from levy and sale upon execution and from any other final process issued from any court." The defendant claimed that the counterclaim statute should be liberally construed and full effect given its terms without regard to its effect upon the exemption statute while the plaintiff claimed that the exemption statute should be liberally construed in his favor.

The court said: "It is beyond dispute that if the counterclaim statute be given full effect the plaintiff would be deprived of his exempt property as effectually as though taken by execution or attachment. In view of the well-established principle in this and other states that exemption privileges allowed by the statute are to be liberally construed, we are satisfied that the contention of the appellant should be sustained. To permit the plaintiff's exemptions to be wrested from him by giving a technical construction to the counterclaim statute, in disregard of the exemption statute, would render its declarations wholly without effect, which we do not think was the legislative intent. Such a construction would result in wholly depriving a debtor of the benefit of the exemption statutes in many cases. If so construed, the principle of liberal construction would be set at naught.

"Many courts, under similar enactments, have given effect to exemption statutes, regardless of the fact that the counterclaim and set-off statutes contain no exceptions or qualifying words. In *Cleveland* v. *McCanna*, 7 N. D. 455, 75 N. W. 908, 41 L. R. A. 852, 66 Am. St. Rep. 670, this court sustained a claim for exemptions, although contrary to the strict letter of the set-off statute, * * * ."

In *Cleveland* v. *McCanna*, 7 N. D. 455, 75 N. W. 908, 910, 41 L. R. A. 852, 66 Am. St. Rep. 670, the court, in dealing

with this same subject, refused to permit the defendant to set off his debt against the plaintiff's claim which arose out of exempt property. There the statute provided that mutual final judgments could be set off one against the other by the court upon proper application. It was claimed that the allowance of a set-off would deprive the plaintiff of his legal right to his exemptions. The court said: "It is true that the procedure under our exemption statute refers more particularly to seizures under attachments and executions, but that is because it is by means of those writs that property is usually seized. But it would be an exceedingly narrow view of the law that would deny exemptions where it was sought to take property by other means. This court is unqualifiedly committed to a liberal construction of exemption statutes. *Red River Valley Nat. Bank* v. *Freeman*, 1 N. D. 196, 46 N. W. 36. In that case we expressly held that the fact that the machinery of the law did not contemplate the exact case there under consideration could not defeat a claim for exemptions. We must make the same ruling here. * * * "

In *Millington* v. *Laurer*, 89 Iowa 322, 56 N. W. 533, 48 Am. St. Rep. 385, the statute provided an exemption for a laboring man of his wages from execution and attachment. The defendant attempted to set off a judgment against the plaintiff's claim for wages. The court in rejecting the set-off held that the exemption was for the benefit of the debtor's family and that to permit a set-off to be asserted against such wages would in many cases destroy the value of the exemption by preventing the family of the debtor from deriving any benefit from it. The court further held that laws exempting the property of debtors from seizure are to be liberally construed to the end that the purpose for which they were enacted can be accomplished. The court also held that the primary object of the statute was not merely to protect the wages of the debtor from seizure by means of the process technically known as judgments and executions but also to preserve them for the benefit of his family from appropriation for the payment of his debts not authorized by law to which he does not consent.

In *First National Bank of Cushing* v. *Funnell,* 144 Okl. 188, 290 P. 177, the bank sought to set off against the plaintiff, who had deposited money received by him from a mutual benefit association, a debt which he owed the bank, but the court held that the deposit represented funds that were exempt under the statute not only from attachment and garnishment but also from set-off, even though "set-off" was not mentioned in the statute.

See also, *Beattyville Co.* v. *Sizemore,* 203 Ky. 7, 261 S. W. 620; *Mason* v. *Green* (Tex. Civ. App.), 226 S. W. 829; *Bowen* v. *Holden,* 95 Mo. App. 1, 75 S. W. 686.

There are some cases to the contrary. For instance, *Caldwell* v. *Ryan,* 210 Mo. 17, 108 S. W. 533, 16 L. R. A. (N. S.) 494, 124 Am. St. Rep. 717, 14 Ann. Cas. 314, and *Lynn* v. *Stanly Creek Cotton Mills,* 130 N. C. 621, 41 S. E. 877, express the other view. These cases and others expressing the minority view have been considered, but we are content to hold in accord with the weight of authority on this subject which we think is the better view.

In the recent case of *Legg* v. *St. John,* 296 U. S. 489, 56 S. Ct. 336, 80 L. Ed. 345, relied upon by the insurance company, it was held that disability payments similar to those in the instant case were assets which passed to the trustee in bankruptcy for the benefit of creditors because no law in Tennessee (the State from which the case came) and no provision of the bankruptcy act exempted them. Of course if there had been an exempting statute in Tennessee similar to our Code, section 4219, the disability payments would have been set aside to the policy holder by the trustee. We do not consider that case as applicable here because there was no statute there which exempted the disability payments.

We fully approve the decree of the trial court in this cause. Until such time as the legislature deems it advisable to place a limitation on the amount of such benefits exempted under Code, section 4219, this court is without authority to deny such exemption regardless of the amount of the benefits involved.

*Affirmed.*