**In re GREEN.**

**No. 1475.**

District Court, W. D. Virginia.

Sept. 20, 1940.

Harry K. Benham and B. P. Harrison, both of Winchester, Va., for trustee.

John P. Allen, of Winchester, Va., for bankrupt.

BARKSDALE, District Judge.

This is an appeal from an order, entered by the Referee at Harrisonburg on July 31, 1940, denying the bankrupt's claim that a certain proportion of commissions on certain premiums paid, and to be paid, on life insurance policies written by him as agent prior to the filing of his petition in bankruptcy was an exemption prescribed by State law under the provisions of Section 6555 of the Code of Virginia 1919, as amended by Acts 1938, c. 356.

The Referee found as facts that at the time of the filing of his petition the bankrupt was, and still is, a "householder and head of a family" within the meaning of the Virginia statute, and that at the time of the filing of the petition the bankrupt was a life insurance agent, and as such had written life insurance policies over a long period of years, and that at the time of the filing of his petition he was entitled to receive a commission on all renewal premiums paid by holders of policies written through his efforts, for a period of nine years, meaning nine years after the year in which the policy originally became effective. Upon these facts, the Referee found that the commissions to which the bankrupt had become entitled since the filing of his petition, and which would become due in the future for the ensuing nine years, were not exempt to the bankrupt under the State law, and that title thereto vested in the Trustee as such commissions became due.

The bankrupt claims that a certain proportion of these commissions fall into the category of "* * * exemptions which are prescribed * * * by the State laws in force at the time of the filing of the petition in the State wherein they [bankrupts] have had their domicile for the six months immediately preceding the filing of the petition, * * *", as set out in Section 6 of the Bankruptcy Act, 11 U.S.C.A. § 24. The State law which the bankrupt relies upon is Section 6555 of the Code of Virginia 1919, as amended, which is as follows: "In addition to the estate, not exceeding the value of two thousand ($2,000.00) dollars and the other property, which every householder or head of a family residing in this Commonwealth shall be entitled to hold exempt, as provided in the preceding sections of this chapter, wages owing or to be owing to a laboring man who is a householder or head of a family, shall be exempt from distress, levy, garnishment or other process to the extent of seventy-five (75%) per centum of such wages, provided, however, that in no case shall such exemption be less than fifty ($50.00) dollars per month nor more than seventy-five ($75.00) dollars per month; and every assignment, sale, transfer, pledge or mortgage of the salary of a laboring man, who is a householder or head of a family, to the extent the same is declared exempt by this section, shall be void and unenforceable by any process of law".—together with the definition of a "laboring man" contained in Section 6566 of the Code as follows: "The term 'laboring man' shall be construed to include all householders who receive wages for their services."

It has been found as a fact that the bankrupt is a "householder". Consequently, by the terms of the statute, he is a "laboring man" and entitled to the exemption if he receives "wages" for his services. Therefore, in order to determine whether or not the provisions of Section 6555 apply to the proportion of the commissions claimed by the bankrupt to be exempt, it is only necessary to determine the sole question of whether or not these commissions constitute "wages" as that word is used in the statute.

Counsel for both sides agree that the word "wages", as here used, has not been defined in any State statute, nor has it been defined, or its use in this statute been construed by the Supreme Court of Appeals of Virginia.

It is well settled that in determining the right to exemptions under State statutes, these, as interpreted by the highest judicial tribunal of the State, are controlling. Eaton v. Boston Safe Deposit & Trust Co., 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723. Since this is true, little if any light is shed by the decisions of other states cited by counsel. And it seems to me unnecessary to search elsewhere for a solution of this question, for, in my opin-

ion, although the word "wages" has not been defined or construed by the statutes or the court of last resort of this Commonwealth, that court has clearly enunciated its policy of construction of exemption statutes, and this declaration of policy is controlling here.

After all, it seems to me that the solution of the question here presented depends entirely upon the scope to be given the word "wages". It can hardly be denied that, given its widest scope, the word "wages" includes "that which is pledged or paid for work or other services", nor that, when given its narrower scope, as is more customarily the case, the word means, "pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees". Webster's New International Dictionary, 2d Ed., p. 2863.

In the case of Atlantic Life Insurance Co. v. Ring, 167 Va. 121, 187 S.E. 449, 451, 106 A.L.R. 1064, the Supreme Court of Appeals of Virginia had before it for construction a provision of one of the exemption statutes, Section 4219, as follows: "The payments in weekly or monthly instalments to the holder of any policy of insurance in any accident company, sick benefit company, or any company of like kind, shall not be subject to the lien of any attachment, garnishment proceeding, writ of fieri facias, or to levy or distress in any manner, for any debt due by the holder of such policy."

Ring had an ordinary life insurance policy, to which was attached a supplemental agreement, whereby the insurance company agreed that if Ring became totally and permanently disabled, then it would pay him $250 a month during such disability, as well as waiving subsequent premiums. Ring became totally and permanently disabled, but prior to such disability he became indebted to the company to the extent of some $9,000, in an independent transaction. The Company sought to apply the disability payments as offsets to the amount which Ring owed it, and denied that Section 4219 precluded it from doing so, first, because the Company was neither an "accident company, sick benefit company, or any company of like kind", and further, that the statute, in terms, protected the disability payments only from "the lien of any attachment, garnishment proceedings, writ of fieri facias, or * *

levy or distress in any manner * * *", and did not protect them from the remedy of setoff.

As it was shown that the Atlantic was an ordinary old line life insurance company, speaking strictly and literally, it did not fall into the category of "any accident company, sick benefit company, or any company of like kind * * *", but the court construed the language broadly, and held that any insurance company which pays such benefits, was a "company of like kind".

Also, it cannot be denied that the remedy of setoff is an entirely different remedy from that of judgment, garnishment, writ of fieri facias, "levy or distress in any manner", and it must be conceded that the statute did not prohibit in express terms the application of a setoff to disability payments.

However, in order to liberally construe the statute in favor of the debtor, the court went further and beyond the language of the exemption, and said: "We are of opinion that the legislative intent was to exempt such payments or benefits to one entitled thereto from all claims of creditors. The legislative purpose of this statute was to protect from the claims of creditors such a policyholder who might be overtaken by accident or sickness and who has become entitled to benefit payments and thus likely prevent him and his family from becoming an object of public charity. While the statute does not in express terms mention 'set-off' along with 'the lien of a judgment,' etc., yet it must be remembered that, such statutes being remedial, they should have a liberal construction in order that the legislative intent and purpose may be accomplished."

Reference is also made to the note following this case in 106 A.L.R. 1064.

In the recent case of South Hill Production Credit Association, etc., v. Gracie V. Hudson, 174 Va. 284, 6 S.E.2d 668, 669, the court cited and approved Atlantic Life Insurance Co. v. Ring, supra, and went even further, in my opinion, in the liberality of its construction of an exemption statute. Section 6552 of the Code, enumerates specific articles which a householder shall be entitled to hold exempt from levy or distress. Section 6553 of the Code, provides for the exemption of additional articles to a householder while engaged in agriculture. Section 6564 provides: "Ev-

ery deed of trust, mortgage, or other writing, or pledge made by a householder to give a lien on property exempt from distress or levy under section sixty-five hundred and fifty-two shall be void as to such property."

Obviously and patently, the protection provided by Section 6564 was made applicable only to such articles enumerated in Section 6552, yet, the court held that this same protection should be construed to attach and be applicable to the additional articles enumerated in Section 6553. The Court said:

"The appellee urges that under the last named section the deed of trust executed by her conveying articles embraced in section 6553 is void; that, although section 6553 is not specifically mentioned in section 6564, it is by inference so allied to section 6552, as to prompt the strongest implication that by legislative intention it is embraced within the meaning of section 6564; that the opposing view is narrow and constricted and, if adopted, would defeat the purpose of the statute; that the statute is a remedial one and must be liberally construed.

"These contentions impress us as being sound and in harmony with the law."

Thus, it appears to me that in these two recent cases (and I know of none to the contrary), the court of last resort of this State, in construing exemption statutes, has declared the policy of this Commonwealth to be that of the utmost liberality to the debtor. In the case now before me, the debtor only asks that the Court give the most comprehensive dictionary definition to the word "wages" in the statute. In the two cases last cited, the Supreme Court of Appeals of Virginia has gone much further in its liberal policy and has, for the benefit of debtors, put words into exemption statutes which do not appear therein.

 I consider this declaration of policy binding in the matter of the construction of the Virginia statute here involved, and it seems to me inescapable that the word "wages" must be given certainly the widest scope which is at all compatible with reason. Therefore, I am of the opinion that the provisions of Section 6555 of the Code of Virginia 1919, as amended, are applicable in this case and that the bankrupt is entitled to the exemption which he claims.