**W. Alan SMITH, Jr., Trustee, Plaintiff,**

v.

**Clarence Maxwell GILES, et al., Defendants.**

Civ. A. No. 83–M–1–L.
Bankruptcy No. 79–000295–L.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Aug. 26, 1983.

---

Alexander W. Bell, Lynchburg, Vt., for plaintiff.

Gordon N. Shapiro, Clifford R. Weckstein, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Defendant filed a voluntary petition for bankruptcy on August 16, 1979. After numerous proceedings below the bankruptcy court denied defendant a discharge and awarded the trustee damages in the amount of $85,000. Defendant appealed the judgment but failed to post the security, as directed by the bankruptcy court, requisite to a stay of execution. Accordingly, plaintiff has, simultaneously with defendant's prosecution of his appeal, begun to execute upon the judgment.[1]

Defendant hired a replacement attorney, Mr. Gordon H. Shapiro, Esq., to represent the former during the appeal. Mr. Shapiro entered into an agreement with the defendant whereby the lawyer was paid $9,500 as a "nonrefundable minimum guaranteed fee," and would be paid at the rate of $100 each for hours of service rendered in excess of 95. On January 7, 1983, plaintiff instituted a garnishment proceeding against Mr. Shapiro seeking recovery of the unearned portion of the $9,500 fee.

On January 13, 1983, plaintiff instituted two additional garnishment proceedings in order to recover the cash surrender value of several life insurance policies owned by defendant.

The present procedural posture of the case, at least technically, is not precisely clear. However, it is obvious that defendants seek to quash the garnishments or otherwise insulate the assets in question from the plaintiff, and the plaintiff seeks to enforce the garnishments. Accordingly, it is in the nature of a summary judgment proceeding. The parties have briefed the issues, and the court turns now to their substance.

### I.

### GARNISHMENT OF ATTORNEYS' FEES

■ The parties have extensively and competently briefed the issue relating to the attorneys' fees held by debtor's attorney, Mr. Shapiro, as if it were a matter of state law. In justifying this choice of law, the trustee has cited Fed.R.Civ.P. 69(a) which provides that "proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held...." The rule, however, continues with the following proviso: "except that any statute of the United States governs to

---

1. This court today affirmed the bankruptcy court in part and remanded the case in part for additional proceedings. *Smith v. Giles,* Civ. Actions Nos. 82–0185–L, 83–0006–L (Aug. 26, 1983).

the extent that it is applicable." The Bankruptcy Code contains specific provisions applicable to the payment of fees to debtors' attorneys. Although this proceeding superficially resembles execution on a judgment in a non-bankruptcy matter, in substance it is more than that. The effective result of successful execution upon the attorneys' fees would be their inclusion in the bankrupt's estate, which would require debtor's attorney to accept a *pro rata* share thereof as a general creditor. Should the attorney be allowed to keep the fee, the practical effect would be the granting to him of a preference or priority over the other creditors. Because disposition of the bankrupt's limited estate, depending as it does upon preferences, priorities, and the like, is the very essence of the bankruptcy law's concern, the court concludes that this matter should be decided in accordance with the Code.

One provision of the Code seems to apply directly:

> (a) Any attorney representing a debtor in a case under this title [11 U.S.C.S. §§ 1 et seq.], or in connection with such a case, whether or not such attorney applies for compensation under this title [11 U.S.C.S. §§ 1 et seq.], shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered *or to be rendered* in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>
>> (1) the trustee, if the property transferred—
>>
>>> (A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11 or 13 of this title [11 U.S.C.S. §§ 1101 et seq. or 1301 et seq.]; or

(2) the entity that made such payment.

11 U.S.C.S. § 329 (1979) (emphasis added).

This provision appears to insure that a debtor's attorney be paid a reasonable fee without being required to enter into the fray when the limited assets are distributed. This makes sense, as debtors might otherwise be unable to secure counsel. Further, the provision makes no distinction between attorneys retained at the inception of the proceedings and those retained solely for appeal purposes. *Cf. Lewis v. Fitzgerald,* 295 F.2d 877 (10th Cir.1961) ("professional services of an attorney in representing the bankrupt in resisting objections to the granting of a discharge are not services which are compensable out of the bankrupt estate." 295 F.2d at 879), *cert. denied,* 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 793 (1962).

On the other hand, "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R.Rep. No. 595, 95th Cong., 2d Sess. 329, *reprinted in* [1978]. U.S.CODE, CONG. & AD. NEWS 5787, 5963, 6285. Because of this, the court can understand the trustee's concerns and desire to recover the payment for the benefit of the estate. Accordingly, the court will order that the garnishment be dissolved. However, the parties should proceed forthwith to comply with § 329 [2] or contest the validity of its application to this case. If the trustee agrees with the reasonableness of the fee, and that debtor's attorney is entitled to a reasonable fee out of the assets of the estate the matter should be, subject to the court's approval, ended.[3] Otherwise, appropriate proceedings should

---

**2.** The debtor's attorney filed a statement of the sort required by § 329 on December 16, 1982. Accordingly, only the applicability of § 329 and the reasonableness of the fee remain to be determined.

**3.** The court does not consider the informal opinion of the Virginia State Bar Standing Committee on Legal Ethics, holding its conception of the fee arrangement to be unethical, to be relevant to the issue presented herein.

be instituted to determine the applicability of § 329 and, if necessary, the reasonableness of the fee arrangement.[4]

## II.

## GARNISHMENT OF INSURANCE POLICIES

■ Defendant owns eleven life insurance policies, all but three of which insure his life. The face values of the policies total $205,047, and the cash surrender values total $10,631.27. Plaintiff seeks to reach all or a portion of the insurance policies through garnishment proceedings.[5]

Although the Bankruptcy Code speaks to the exemption of life insurance policies, 11 U.S.C.S. § 522(d)(7), (8), the court agrees with the parties that state law governs this issue. Va.Code § 34–3.1 (Michie's Supp. 1983). Under Virginia law, appropriate beneficiaries are entitled, as against the owner's creditors, to the "proceeds and avails" of insurance policies. Va.Code § 38.1–448. This seemingly unlimited exemption is tempered by Va.Code § 38.1–449 which limits the "protection afforded by § 38.1–448" to $10,000 in the case of "householders or heads of families" who have reserved the right to change the beneficiary. The court has examined the nine policies entrusted to its care and is satisfied that they fall within this category.

It appears that the crux of the issue turns on whether "the protection afforded by

§ 38.1–448" refers to face or cash surrender value. Three of the commentators assume without discussion that the former is correct. Ulrich, *Virginia's Exemption Statutes—The Need for Reform and a Proposed Revision*, 37 WASH. & LEE L.REV. 127, 150 (1980); Faris, *Exemption of Insurance and Other Property in the Virginias and Carolinas*, 17 WASH. & LEE L.REV. 19, 39 (1960); Worthington, *Exemption of the Debtor's Life Insurance in Virginia*, 42 VA.L.REV. 239, 250 (1956). Under this view, only so much of the cash surrender value necessary to maintain death benefits of $10,000 would be exempt.[6]

However, recent authority has challenged this view. Note, *The Failure of the Virginia Exemption Plan*, 21 W. & M.L.REV. 851, 863–65 (1980). This approach suggests that $10,000 of cash surrender, rather than face, value should be exempt. The bankruptcy court for this district has adopted this view. *In re Manicure*, 29 B.R. 248, 253–54 (1983) (Pearson, J.).

In general, exemption statutes should be construed liberally in favor of the debtor. *South Hill Production Credit Association v. Hudson*, 174 Va. 284, 6 S.E.2d 668, 669 (1940); *Atlantic Life Insurance Co. v. Ring*, 167 Va. 121, 187 S.E. 449, 451 (1936). Several considerations identified by the commentators lead this court to conclude that up to $10,000 of cash surrender value is exempted.

Giles has advanced feeble protests against the method chosen by the plaintiff, but has suggested no alternative. In this regard, plaintiff stands ready to serve creditor's bills already filed. In the absence of more complete argument by plaintiff, this court is unprepared to rule on the propriety of the garnishment process. In light of the disposition, however, the court assumes that collection of the available amount will not be problematic.

---

4. If it is eventually determined that all or part of the $9,500 is to be returned to the trustee this court notes that Mr. Shapiro has represented that the appropriate amount can be readily transferred even though the prepaid fee has not been maintained in a separate account. The court is satisfied as to the solvency of Mr. Shapiro's firm.

5. The courts have generally held that garnishment is not a proper method for executing upon life insurance policies, and "[t]he precise nature of the creditors' remedy remains unclear." Ulrich, *Virginia's Exemption Statutes— The Need for Reform and a Proposed Revision*, 37 WASH. & LEE L.REV. 127, 151 n. 140 (1980). Clearly, to the extent the creditor can reach the policies, some process must be available. *White v. Pacific Mutual Life Insurance Co.*, 150 Va. 849, 143 S.E. 340, 344 (1928). Defendant

6. This appears to be the aim of the example contained in the Worthington article. 42 VA.L. REV. at 150. Not being versed in the intricacies of the actuarial nature of insurance calculations, the court will assume that, in the Worthington example, exempting $800 of the policies' cash surrender values would result in two policies having an aggregate face value of $10,000.

First, the reference in § 38.1–449 to "the protection afforded by § 38.1–448" could logically refer to either face or cash surrender value. Cases construing provisions nearly identical to § 38.1–448 have routinely interpreted the phrase "proceeds and avails" to include cash surrender value. *See, e.g., In re Messinger,* 29 F.2d 158, 160–61 (2d Cir.1928) (construing almost identical New York statute), *cert. denied ex rel Reilly v. Messinger,* 279 U.S. 855, 49 S.Ct. 351, 73 L.Ed. 996 (1929); *In re White,* 185 F.Supp. 609, 611–13 (N.D.W.Va.1960) (West Virginia statute); *Home Security Life Insurance Co. v. McDonald,* 277 N.C. 275, 177 S.E.2d 291, 294–98 (1970) (North Carolina statute). The court does not consider the passage of § 38.1–449 to have altered the construction given to statutes similar to § 38.1–448, although it has to admit that the latter provision seems to have become somewhat superflous on account of the former.

Further, as long as the insured lives, the cash surrender value constitutes the true asset avalable to satisfy the insured's creditors. The face value would come into effect only upon the insured's death. *See* Ulrich, *supra* note 5, at 151–52 (assuming that only face value is exempted but suggesting that "protection granted should be stated in terms of cash surrender value."). It is logical to assume that the legislature intended to insulate a certain amount of available resources, *i.e.,* cash surrender value while the debtor lives, and face value after his death.[7]

Finally, the court believes that the method chosen will be most readily administered. Calculation of cash surrender values should be fairly easily accomplished. Determining what cash surrender value is required to maintain a certain value of insurance may be somewhat more difficult. *See* note 6, *supra.*

Accordingly, $10,000 of the cash surrender value of the eleven policies is exempt from execution by defendant's creditors. Because the amount of the exemption exceeds $10,000, it "shall be allowed as to each of such policies pro rata in accordance with the respective annual premiums involved." § 38.1–449. The court shall leave to the parties the proper allocation of the $631.27 available to plaintiff. If they cannot agree, appropriate application may be made to this court.[8]

An appropriate order implementing the foregoing opinion will be entered.

---

7. The court expresses no opinion as to whether the trustee will be entitled to execute upon the proceeds of the insurance policies should defendant die within the applicable statutory period. However, should the defendant cash in the policies or assign them for his benefit, they will then become subject to collection by the trustee. *Messinger,* 29 F.2d at 161–62.

8. Instead of prorating each policy, defendant may wish to surrender, for example, National Life Insurance Company policy number 1122091, which has a cash surrender value of $626.81.