# Richmond

## GOLDBURG COMPANY, INC. v. P. W. SALYER, TRADING AS ELECTRICAL APPLIANCE COMPANY, INC.

November 22, 1948.

Record No. 3387.

Present, All the Justices.

*William T. Bowen, H. J. Kiser* and *A. F. Kingdon,* for the plaintiff in error.

*M. W. Vicars,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is a controversy between Goldburg Company, Inc., the appellant, a creditor of P. W. Salyer, over a claim of the latter to a homestead exemption in the proceeds of a fire insurance policy in payment of a loss on a shifting stock of merchandise and fixtures.

The record consists of the pleadings, a scanty, agreed stipulation of facts, and the judgment of the trial court.

On June 4, 1947, a writ of *fieri facias* was sued out of the Clerk's Office of the Circuit Court of the county of Wise, Virginia, in favor of Goldburg Company, Inc., against P. W. Salyer, trading as Electrical Appliance Company, Inc., for $335.04, with interest and costs. On the following day, Goldburg Company, Inc., caused a summons in garnishment to be issued against the Manhattan Fire & Marine Insurance Company and the New Brunswick Fire Insurance Company requiring them to answer as to their indebtedness to Salyer.

The New Brunswick Fire Insurance Company answered and said that it was not indebted to Salyer in any amount whatsoever. It further averred that on March 28, 1947, it had paid in full to the holders a total loss under a policy of fire insurance, which had been held by P. W. Salyer and

P. L. Taylor, trading as Electrical Appliance Company, Inc., and that at the time of payment it had no knowledge of any debt due or owing by Salyer to the Goldburg Company.

The Manhattan Fire & Marine Insurance Company answered and said that, while it did owe $1,250 to P. W. Salyer and P. L. Taylor, trading as Electrical Appliance Company, Inc., by virtue of a policy of fire insurance, it had by reason of a number of garnishee actions served upon it in the trial justice court for Wise county, Virginia, filed a bill of interpleader in that court, and pursuant to an order had paid the said sum into that court, and had been discharged from its obligations.

This is the stipulation as to the facts:

"It is stipulated by Counsel for plaintiff and Counsel for Principal Defendant, P. W. Salyer as follows:

"That Goldburg & Company, Inc., has a valid judgment against the defendant P. W. Salyer; for a debt upon contract;

"That execution has issued on the same and funds in the hands of Manhattan Fire & Marine Insurance Co. (which has heretofore been paid into the Trial Justice Court) and funds in the hands of the New Brunswick Fire Insurance Company, have been garnisheed for the satisfaction of said execution; That said insurance fund is in payment of a loss of a shifting stock of merchandise and fixtures.

"That the debt upon which the judgment was taken does not waive the Homestead Exemption;

"That prior to the date of said judgment, P. W. Salyer, a married man (wife and two children, age 9 and 7 respectively) a householder and head of a family, residing in Wise, Wise County, Virginia, did on the 29th day of March, 1947, exercise his Constitutional privilege of claiming as exempt from garnishment, the said funds due to him from said Insurance Companies, which said Homestead was duly recorded in the Clerk's Office for Wise county, in Miscellaneous Lien Book No. 8, page 229, on the 9th day of May, 1947."

The homestead exemption above referred to reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That I, P. W. Salyer, a native born white American citizen, residing at Wise, Wise County, Virginia, being over the age of twenty-one years and a householder and head of a family, do hereby declare my intention to, and do hereby file and claim this my Homestead Exemption, under the Constitution of Virginia and the statutes enacted in pursuance thereof, the following property and money due to me, as exempt from levy and garnishment for any and all debts owed by me upon contract.

"1. One Thousand dollars ($1,000) due to me from the Manhattan Fire and Marine Insurance Company, 99 John St., New York, N. Y.

"2. One Thousand dollars ($1,000) due to me from the New Brunswick Fire Insurance Company, of New Brunswick, New Jersey.

"I have not heretofore claimed my exemptions under the Homestead Laws.

"Given under my hand and seal this the 29th day of March, 1947.

P. W. SALYER (Seal)."

On August 25, 1947, the proceeding came on to be heard before the trial judge, neither party demanding a jury. The trial court being of opinion that the defendant was entitled to the benefit of his homestead exemption and entitled to receive the money owing to him by the two fire insurance companies, dismissed the garnishee summons, directed that $2,000 of the monies due from the two fire insurance companies be paid to the defendant, the balance to be distributed by order of the court, and entered a judgment against the plaintiff for the cost of the proceeding.

The record does not disclose when the fire loss occurred; but it is obvious that it occurred before the *fieri facias* in favor of appellant was issued and before this proceeding was instituted. It does not disclose the respective values of the stock of merchandise and fixtures destroyed. Although ap-

pellant, in his brief, states that its judgment was upon an open account for merchandise sold and delivered to. Salyer, the record itself does not show that the judgment was to recover other than "for a debt upon contract."

The sole assignment of error is that, since a portion of the insurance money was in payment of the shifting stock of merchandise, not itself exempt, no exemption can be applied to such proceeds.

The exact question here raised has never heretofore been presented to us. No case from any other jurisdiction, based upon the same facts, or upon constitutional and statutory provisions similar to those of Virginia, has been cited to us. The determination of the question must depend upon the construction to be given our Constitution and statutes relative to the exemption of personal property from sale and execution.

■ Under the Constitution of Virginia, section 193, and by the great weight of authority, homestead exemption provisions are considered as remedial, and the rule is that they must be liberally construed in favor of the debtor and strictly against the creditor. They are enacted to insure the unfortunate debtor and his equally unfortunate, but more helpless, family a means of shelter and a measure of existence. 26 Am. Jur., Homestead, section 11, page 13; 40 C. J. S., Homestead, page 438.

In most jurisdictions, but not in all, funds realized from the insurance of exempted property are themselves exempted. The money is deemed to represent or stand in the place of the property which has been destroyed. 40 C. J. S., Homestead, page 513; 26 Am. Jur., Homestead, section 51, page 33.

See Annotation and numerous cases cited 63 A. L. R. page 1286.

The pertinent provisions of our Constitution and statutes are set out below.

Section 190 of the Constitution provides:

"Every householder or head of a family shall be entitled, in addition to the articles now exempt from levy or distress

for rent, to hold exempt from levy, seizure, garnishment, or sale under execution, order, or other process issued on any demand for a debt hereafter contracted, his real and personal property, or either, including money and debts due him, to the value of not exceeding two thousand dollars, to be selected by him; provided, that such exemption shall not extend to any execution, order, or other process issued on any demand in the following cases:

"First: For the purchase price of said property, or any part thereof. If the property purchased, and not paid for, be exchanged for, or converted into, other property by the debtor, such last named property shall not be exempted from the payment of such unpaid purchase money under the provisions of this article;

" * * * * ".

Section 191 is as follows:

"The said exemption shall not be claimed or held in a shifting stock of merchandise, or in any property the conveyance of which by the homestead claimant has been set aside on the ground of fraud or want of consideration."

Virginia Code, 1942 (Michie), section 6531, follows the constitutional provisions:

"Every householder or head of a family residing in this State shall be entitled, in addition to the property or estate which he is entitled to hold exempt from levy, distress, or garnishment under sections thirty-six hundred and fifty, thirty-six hundred and fifty-one, and thirty-six hundred and fifty-two, (Secs. 6552, 6553, 6555 of this Code) to hold exempt from levy, seizure, garnishment, or sale under any execution, order, or process issued on any demand for a debt or liability on contract, hereafter contracted, his real and personal property, or either, to be selected by him, including money and debts due him, to the value of not exceeding two thousand dollars; provided, that such exemption shall not extend to any execution order or other process issued on any demand in the following cases:

"First: For the purchase price of said property or any part thereof. If the property purchased and not paid for

be exchanged for or converted into other property by the debtor, such last named property shall not be exempted from the payment of such unpaid purchase money under the provisions of this section.

" * * * *

"Seventh: Said exemption shall not be claimed or held in a shifting stock of merchandise (and such stock shall be considered shifting after an assignment by the owner thereof for the benefit of creditors and after a voluntary or involuntary adjudication in bankruptcy), or in any property the conveyance of which by the homestead claimant has been set aside on the ground of fraud or want of consideration.

" * * * * "

It will be noted that neither of the foregoing constitutional or statutory provisions restricts the exemption which the householder may claim to any particular articles of property, real or personal; but each allows the debtor to select, real and personal property, or either, "including money and debts due him, to the value of not exceeding two thousand dollars."

The provisos in our Constitution and statutes which forbid an exemption in property not paid for are not applicable here, because, as we have stated, there is no evidence in the record that the defendant had not paid the purchase price of the property destroyed, or that he exchanged property not paid for into other property.

In *Edgewood Distilling Co. v. Rosser*, 116 Va. 624, 82 S. E. 716, there was a controversy between the appellant, a creditor of J. E. Rosser, deceased, and the infant children of the decedent over a claim by the children to a homestead exemption in the proceeds of a sale of the personal estate of decedent, made by his administrator.

Rosser, a retail liquor dealer, died intestate, survived by his wife and three infant children. The administrator made an inventory and appraisement of the property, including stock of goods on hand at the death of his intestate. He sold the entire personal estate in bulk, comprising mer-

chandise, fixtures, equipment, good will, etc., for $2,550. After the sale, the guardian of the infants filed a homestead deed on their behalf claiming exemption of $2,000 of the money in the hands of the administrator. Rosser was heavily in debt at the time of his death, and a creditors' suit was brought to administer his estate, under the direction of the court. One of the grounds alleged against the allowance of the homestead was because of the Constitutional and statutory provisions declaring that such exemption "shall not be claimed or held in a shifting stock of merchandise." In passing upon this contention, it was held:

"The exemption, in this instance, does not come within the inhibition. It is true the fund in question is in part the product of the sale of goods in stock in Rosser's lifetime, and at that time constituted a shifting stock of merchandise within the meaning of the prohibition; but upon his death, by operation of law, title to all his personal assets devolved upon his administrator, who had neither added to the stock by purchase nor diminished it by sale. In other words, the business absolutely terminated with the death of Rosser, and the stock ceased to be shifting and became fixed and stable, and so remained intact until, as remarked, it was converted into money by the administrator by a sale at public auction and in bulk."

In the present case, the shifting stock of merchandise was absolutely destroyed by fire, and the stock not only ceased to be shifting, but ceased to exist. The claim of Salyer, the owner, to money due under his contract of insurance, became fixed and stable. The claim was not to a shifting stock of merchandise; it was specifically for "money and debts due," a classification of property entitled to be claimed as exempt.

It is rather significant, we think, that in the seventh proviso or exception in Code, section 6531, it is provided that certain voluntary and involuntary acts of a debtor shall bar his right to claim or hold an exemption in a shifting stock of merchandise,—that is, "after an assignment by the owner thereof for the benefit of creditors, and after a

voluntary or involuntary adjudication in bankruptcy, or in any property the conveyance of which by the homestead claim has been set aside on the grounds of fraud or want of consideration." The inclusion of these three specific exceptions in the classification of property not exempt excludes any implication of an exception where the merchandise has been destroyed by fire or other casualty.

The fact that a shifting stock of merchandise is not exempt from execution cannot affect the question before us, under the circumstances here, in view of the constitutional and statutory provisions allowing an exemption "in money and debts" to the claimant. As well, might it not be claimed that because the shifting stock was not exempt from execution, the proceeds realized from its sale in the ordinary course of business would not be exempt? Proceeds from such transactions, retained as cash, come within the classification of money allowed to be claimed as exempt.

In support of its contention the appellant cites the cases of *Rose* v. *Sharpless & Son* (1880), 33 Gratt. (74 Va.) 153; *Simmang* v. *Pennsylvania Fire Ins. Co.*, 102 Tex. 39, 112 S. W. 1044, 132 Am. St. Rep. 846; and *Cities Service Oil Co.* v. *North River Ins. Co.*, 130 Tex. 186, 187, 107 S. W. (2d) 994.

The facts in *Rose* v. *Sharpless & Son, supra,* are wholly different from those here. That case was decided before the adoption of constitutional and statutory provisions denying a homestead exemption in a shifting stock of merchandise. There it was shown that a large portion of a shifting stock of goods, claimed as exempt, had not been paid for, and had been so intermingled with those that had been as to put it out of the power of the vendors to distinguish between the two. It was, however, then provided that if the purchase money of goods had not been paid, the debtor was not entitled to hold them under the homestead law. Stating that the *onus* was on the debtor, under the circumstances of that case, to show which of the goods embraced in his homestead claim had been paid for, it was held that it was evident that the whole transaction was a fraudulent

contrivance of the debtor to shield his property from the payment of his debts.

In each of the Texas cases cited the debtor claimed an exemption from execution in the proceeds of insurance from certain personal property destroyed by fire. In each instance it was held that since the property destroyed was not exempted under the laws of Texas from execution and garnishment, the insurance proceeds were not exempt. However, it does not appear that either the constitution or statutes of Texas allowed a householder to claim an exemption "in money and debts due him."

The liberal construction required to be given to our constitutional and statutory provisions does not authorize the courts to reduce or enlarge the exemption, or to read into the exemption laws an exception not found there.

For the reasons stated, we are of opinion that the money paid from the insurance policies to the extent of $2,000 was exempt from execution. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*