In re James Michael **MARTIN**, Debtor.

James Michael **MARTIN**, Movant,

v.

**AVCO FINANCIAL SERVICES,**
Respondent.

**Bankruptcy No. 7–92–00358–HPR–7.
Motion No. 2.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Aug. 12, 1993.

Thomas B. Dickenson, King, Fulghum, Snead, Nixon & Grimes, Roanoke, VA, for debtor/movant.

Stephen E. Dunn, Lynchburg, VA, for respondent.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

Before the Court are Motions of James Michael Martin ("Debtor" or "Movant") to reopen his Chapter 7 case and avoid certain liens on his personal property and a companion Motion to hold AVCO Financial Services of Madison Heights ("AVCO" or "Creditor") in contempt and impose sanctions for violating the permanent injunction provisions of the discharge order issued pursuant to the Bankruptcy Code by virtue of this Creditor's post-discharge detinue actions seeking to recover its collateral and also seeking the alternate value of that collateral in the form of a personal money judgment under Virginia state court procedure.

The precise issues presented are (1) whether the Creditor's post-discharge ac-

tions violate the injunctive provisions of 11 U.S.C. § 524(a), and (2) if so, whether those actions were willful and contemptuous and thus susceptible to the imposition of sanctions. This Court has jurisdiction of these core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334(b).

## DISCUSSION

The facts in this case are essentially uncontroverted. On September 20, 1990, AVCO loaned Debtor the sum of $1,931.76, to be repaid over 36 months at 28.09%. In exchange, the Debtor granted AVCO a non-possessory, non-purchase money security interest in certain items of personal property, consisting of stereo equipment and a VCR, an exercise machine, and a lawnmower. This security interest was properly perfected under state law of Virginia.

Debtor filed his Chapter 7 petition in this Court on February 18, 1992 and in his schedules listed AVCO's obligation as a general unsecured, nonpriority obligation; the Creditor, however, filed its proof of claim listing portions of its claim as both secured and unsecured. The Debtor, while this case was open in this Court and being administered, did not formally object to the proof of claim nor attempt to have the lien avoided pursuant to § 522(f).

On July 15, 1992, following the issuance by this Court of the discharge order on May 19, 1992, the Creditor brought a Warrant in Detinue in the local general district court, seeking the return of the collateral securing the still valid lien. This first warrant did not list nor seek a judgment for any alternate value to be awarded in lieu of turnover of the collateral. For procedural reasons, a second warrant was issued on August 18, 1992; this second warrant listed an alternate value of $1,175.00.[1] When the Debtor did not appear, the state court entered a personal judgment for $1,175.00.

---

1. This is the same amount listed by the Creditor as secured in its proof of claim. Although there is no contention that this listing of an alternate value was deliberately done by the Creditor, its effect was clear and unequivocal: where a de-

fendant in such an action fails to appear to defend the action, as this Debtor did not, the defendant/debtor is adjudged to be personally liable for the listed amount.

Subsequently, the Creditor caused a garnishment summons to be issued against the Debtor and garnished approximately $300 from the Debtor's checking account. When the state court later learned of the discharge previously granted in this case, the garnishment was quashed and the $1,175.00 judgment was vacated.

The Debtor, in his petition, listed certain personal property exempt pursuant to § 522(b) and Virginia Code Ann. § 34-4, *et seq.*, (1950, as amended). Included in the Debtor's amended schedules for personal property and property claimed exempt were the same stereo and VCR and lawnmower subject to the Creditor's lien. According to the record and stipulations agreed upon by counsel, the Movant had discarded the stereo and VCR prior to filing, due to its old and inoperable condition. The exercise bicycle had been sold prior to the filing and, thus, was listed on the Movant's amended Schedule C, filed pursuant to prior order of the Court.[2] AVCO did not object to Debtor's exemptions as required by Rule 4003(b) and held to be mandatory under *Taylor v. Freeland & Kronz*, 503 U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

Subsequent to the discharge the Creditor began its attempts to collect on the debt owed by the Debtor. When the Creditor began threatening criminal actions for the alleged disposal of all the collateral but the lawnmower, still in the Debtor's possession, Debtor brought the within Motions.

At the hearing on the motion to reopen and for sanctions, both parties stipulated to the evidentiary documents submitted, and subsequently submitted authorities supporting their respective positions. Among those stipulated documents were copies of the judgment and garnishment issued by the state court as well as a list of other consumers with whom AVCO has previously dealt in a similar fashion as the Debtor herein. While the other instances are not

before this Court, important to this Court's decision is the Creditor's stipulation that its recovery procedures enunciated herein, particularly seeking a personal judgment for the collateral's alternate value under state law after a discharge has issued, form the basis of its corporate policy toward debtors in this Court.

## CONCLUSIONS OF LAW

### I.

Initially the Court notes that remedial statutes such as the Bankruptcy Code are generally held to be liberally construed in favor of the debtor, in order to better facilitate that debtor's fresh start. *Gleason v. Thaw*, 236 U.S. 558, 560, 35 S.Ct. 287, 288, 59 L.Ed. 717, 719 (1915); *Roberts v. W.P. Ford & Son*, 169 F.2d 151, 152 (4th Cir.1948) (citing *Johnston v. Johnston*, 63 F.2d 24, 26 (4th Cir.1933) and *Lockhard v. Edel*, 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized purpose serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 659, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt*, 292 U.S., at 244, 54 S.Ct. at 699; *Johnston v. Johnston*, 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper*, 26 F.2d 585, 587 (4th Cir.1928).

The discharge order issued herein applies to all of the Debtor's pre-petition debts, and acts to generally discharge a debtor from all personal liability on those debts. *See* 11 U.S.C. §§ 524(a) and 727(b). The

---

2. Sometime prior to filing, the Movant had sold the exercise bicycle and turned all proceeds over to the Creditor. However, Movant acknowledges that he did not inform the Creditor at that time or thereafter, until the filing, that

the bicycle had been sold. There is no contention under these facts that the sale was consummated in less than good faith or to defraud the Creditor.

Debtor moved to reopen his case after the Creditor initiated the post-discharge actions against him and allegedly threatened him with criminal action.

■■■ A debtor is generally permitted the right to reopen a case, to "accord relief to the debtor, or for cause." *See* 11 U.S.C. § 350 and Bankr.Rule 5010. No other limitation exists upon the right of a debtor to reopen his or her case, and it is generally within the Court's discretion to order a case reopened to allow a debtor to move for avoidance of a lien on exempt property. *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 327 (4th Cir.1984) (Widener, J., dissenting) (dissenting from decision only, but agreeing with opinion holding that such decisions rest with discretion of bankruptcy court). This Court finds no prejudice to the Creditor herein by allowing the case to be reopened in order to properly consider the lien avoidance motion, 3 *Collier* ¶ 522.29[1], at 522–96, –97, as well as the propriety of the Creditor's actions.

■■■ In considering the main issue herein—whether the Creditor's post-discharge actions, taken with regard to exempt property which secured the underlying debt, violated the permanent injunction provisions of § 524(a)—the Court notes that the same rule of liberally construing a federal remedial statute in favor of the debtor is recognized in Virginia as it pertains to the Virginia exemption statutes. *In re Smith*, 22 B.R. 866, 867 (Bankr.E.D.Va.1982) (*citing Home Owners Loan Corporation v. Reese*, 196 S.E. 625, 626, 170 Va. 275 (1938)); *Dickens v. Snellings (In re Snellings)*, 10 B.R. 949, 951 (Bankr.W.D.Va. 1981), (*citing Wilkinson v. Merrill*, 12 S.E. 1015, 87 Va. 513 (1891) and *Linkenhoker v. Detrick*, 81 Va. 44 (1885)); *Goldburg v. Salyer*, 50 S.E.2d 272, 274, 188 Va. 573 (1948).

The Court is mindful that, in construing the provisions which govern here, *supra*, it must "neither reduce nor enlarge the exemptions or read into the law an exemption not found there." *Goldburg*, 50 S.E.2d, at 277. Nevertheless, the Court also recognizes and agrees with the corollary principle that "any ambiguities found in state exemption laws must be resolved in favor of debtors." *In re Redmon*, 31 B.R. 756, 759 (Bankr.E.D.Va.1983) (citations omitted). Given the absolute nature of the language of § 524(a), and the lack of any exceptions to the injunction protection inherent in the discharge order, where exempt property is at issue the Court considers these principles applicable to questions arising under § 524(a).[3]

**II.**

■■ The Creditor contends that the Debtor's § 522(f) avoidance motion is not timely and should only be properly filed and heard before a discharge has issued. The Creditor relies on *In re Andrews*, 22 B.R. 623 (Bankr.D.Del.1982), for this argument. The *Andrews* court noted, as does this Court, that the Bankruptcy Code and Rules do not provide any limitations on when lien avoidance motions must be brought by a debtor. *Id.*, at 625. *See also In re Adkins*, 7 B.R. 325 (Bankr.S.D.Cal. 1980) (same result using very similar rationale). As herein stated, the Creditor has a duty to file objections to claimed exemptions under Rule 4003.

■■ The Court in *Andrews* may arrive at a different result; however, in light of the principles and underlying case law discussed, *supra*, the analogy to the related code provisions fails by virtue of intervening bankruptcy legislation which, *inter alia*, has removed the pre-petition requirement formerly applicable to reaffirmation agreements under § 524(c). Given the intervening legislative changes, the impor-

---

**3.** 11 U.S.C. § 524(a) provides in pertinent part:
"A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ...;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...."

tance of the discharge injunction to a debtor's fresh start far outweighs any benefit which "interests of finality" might bring to this issue. Thus, the debtor, under Rule 1009, may amend schedules without limitation of whether the case is open or reopened after closing.

Although there is little case law illuminating this area, particularly cases discussing the interplay of §§ 522(f) and 524(a), a particularly good discussion of the issues is found in *In re Schneider*, 18 B.R. 274 (Bankr.D.N.D.1982). In *Schneider* the Court consolidated several adversary proceedings brought by the debtors post-discharge to avoid liens under § 522(f)(2). In a succinct discussion of both sides of the argument, *Schneider* sided with those cases which held that any undue constraints or court imposed limits on a debtor's statutory right to avoid liens under § 522(f) were impermissible, absent limitations imposed by Congress. *Id.*, at 275–76 (citations omitted).

■ Congress has clearly shown that it can and will place such limits on bringing certain actions in bankruptcy and when those limits may and may not be extended. *See e.g.*, Bankr.Rule 9006(a), (b) and (c). Any such limits are notably absent from § 522(f) and Bankr. Rules 4003 and 9014 or 1009. Such limitations are properly the sole domain of Congress or rule-making authorities generally; for this Court to impose any in this context would clearly be inappropriate.

### III.

■ Having determined that the discharge order injunctions broadly protect the Debtor from any and all acts asserting personal liability for pre-petition debt and, further, that the post-discharge motions herein are properly before the Court, the crucial remaining issue is whether the Creditor's post-discharge actions are prohibited by the injunctive provisions of § 524(a). Specifically, the Creditor contends that its post-discharge issuance of a Warrant in Detinue, listing and seeking personal judgment for an alternate value for the collateral sought, is a proper action

where its lien was not avoided before a discharge issued.

■ Regarding the propriety of post-discharge actions which assert pre-petition liens not previously avoided, there is little doubt that such actions are permissible *only* to the extent they seek recovery of the creditor's property upon which it has a valid lien and payment of its debt from the collateral securing the lien; such actions cannot go further and attempt *in any way* to seek a deficiency judgment and assert any ongoing personal liability of a debtor for such remaining unsecured claim resulting from liquidation of collateral. *Matter of Hunter*, 970 F.2d 299, 310 (7th Cir.1992); *Green v. Welsh*, 956 F.2d 30, 33–34 (2nd Cir.1992); 3 *Collier* ¶ 524.01[1], at 524–8, –9 (15th Ed.1993).

■ Under the former Bankruptcy Act of 1898, as amended, the debtor often faced post-discharge actions for enforcement of liens which had survived bankruptcy, even though the underlying personal obligation had been discharged. These debtors under the former Act had an affirmative duty to appear in court where the actions were brought, defend these actions, and plead the discharge as an affirmative defense to personal liability. 3 *Collier* ¶ 524.01[1], at 524–6, –7 (quoting 116 Cong.Rec. 9549 (1970), reprinting the House floor discussion on purpose and intended effect of section 14(f)). Section 524(a) was based on section 14(f) of the former Act, and was added to the general discharge provisions to prevent the debtor from having to appear in court or take any action whatsoever regarding such post-discharge assertions of personal liability. *Id.* (quoting H.R.Rep. No. 91–1502, 91st Congress, 2nd Sess. 1970, and S.Rep. No. 91–1173, 91st Cong. 2nd Sess. 1970), U.S.Code Cong. & Admin. News 1970, p. 4156.

■ Section 524(a) goes much further than section 14(f) did in protecting a debtor from post-discharge collection efforts and is intended to enjoin both direct and indirect acts, e.g., garnishment, which attempt to coerce payment from the debtor on the discharged debt. 3 *Collier* ¶ 524.-

01[1]. Likewise, initiating or pursuing criminal process, specifically in furtherance of a creditor's collection efforts, has been held an impermissible violation of § 524(a). *See Whitaker v. Lockert (In re Whitaker),* 16 B.R. 917 (Bankr.M.D.Tenn.1982); *In re James,* 10 B.R. 2 (Bankr.W.D.N.C.1980). Recognizing that this restriction should not inhibit the legitimate actions of prosecutors generally, this Court has previously held that criminal actions, initiated or pursued to circumvent the injunction provisions of the Bankruptcy Code, were prohibited and would not be allowed post-discharge. *In re Caldwell,* 5 B.R. 740, 742 (Bankr.W.D.Va. 1980).[4] This rule holds true today as well.

In sum, the few cases forced to actually decide the question state unequivocally that no actions *whatsoever* may be taken to assert a debtor's personal liability for a debt discharged in Chapter 7. *Matter of Hunter, supra; Green v. Welsh, supra;* 3 *Collier* ¶ 524.01[1]. In this instance, the Creditor may have been entitled to proceed by a post-discharge Warrant in Detinue in state court for the return of the collateral, since the Debtor failed to move to avoid the Creditor's lien during the pendency of the case. However, obtaining the deficiency judgment and the garnishment, which were issued therefrom in the state court and partially collected upon, as well as any alleged threats of criminal process which seek primarily to coerce a debtor into paying, or agreeing to pay, a previously discharged debt, are clearly impermissible violations of § 524(a)(2). Such procedure seeks to do indirectly that which is clearly prohibited by statute to be sought directly. ▮▮▮▮ Likewise, while seeking a Warrant in Detinue alone for the recovery of property does not run afoul of the statute, seeking and obtaining a judgment for the collateral's alternate value and then subsequently garnishing the debtor's wages in satisfaction thereof is the type of action to which this Debtor should not have to respond and which the Congress has sought to avoid. Contrary to the Creditor's assertion in its brief in opposition to the within motions, obtaining a judgment for the alternate value is nothing more than obtaining a further determination of a debtor's personal liability for a deficiency arising from liquidation of collateral which might secure a creditor's debt. Such acts are part and parcel of the very behavior Congress intended to prohibit, are unequivocally proscribed by the broad injunctive provisions of § 524(a)(2), and subject a creditor to sanctions for contempt in appropriate cases where the facts warrant.

## IV.

▮▮▮ The Creditor herein bases this argument on its interpretation of the Virginia Code sections governing Warrants in Detinue, *See* Va.Code Ann. § 8.01–121, and recovery under such state court procedure for the collateral's alternate value. It also relies on Virginia case law which permits the issuance of a personal judgment against a debtor who does not defend the Warrant in Detinue and does not return the collateral. *See, e.g., Broad Street Auto Sales, Inc. v. Baxter,* 334 S.E.2d 293, 294, 230 Va. 1 (1985).

The crux of the Creditor's argument, as stated in its brief, is its contention that the warrant in detinue was based on the return of the collateral and *not* the obligation discharged in Chapter 7. Thus, while acknowledging that 11 U.S.C. § 524 enjoins any attempts to collect such a debt as a debtor's personal liability, it argues the section does not enjoin efforts to obtain and collect from a personal judgment for the alternate value of the collateral.

---

4. The Court notes that should a creditor, during the pendency of a case, have any question regarding its debt, appropriate means for challenging the discharge of that debt are available through institution of an adversary proceeding under Bankr.Rule 7001. This allows the Court to determine any objection by a creditor to the debtor's discharge or to determine the dischargeability of a debt under § 523. Any debt determined by the Court to be nondischargeable is, of course, omitted from the provisions of the discharge injunction.

These procedural mechanisms are the only appropriate means, as sanctioned under the Code, for asserting a debtor's ongoing liability after a discharge has issued.

This argument, while consistent with a general understanding of the relevant Virginia statutes, *supra*, ignores the context in which this question arises. While the Creditor is correct that its actions did not violate the automatic stay of 11 U.S.C. § 362, that is only because the Creditor's actions were taken after the stay was no longer in place. *See* 11 U.S.C. § 362(c)(2)(C). The permanent injunction provisions of § 524 fall into place upon issuance of the discharge order and take effect when a discharge order is entered and protects the debtor as did the stay of § 362 and is the substitute therefor. The Creditor appears to contend that seeking the alternate value through a state court judgment is fundamentally different from asserting the same debtor's personal liability under the original contract obligation previously discharged, or that state law in this area supersedes the bankruptcy provisions governing a creditor's post-discharge collection efforts.

The first argument is at best incongruous and denies the economic realities inherent in seeking personal satisfaction of such a judgment from the same debtor with whom the original loan agreement was made. Such a judgment is nothing more than asserting personal liability of the debtor for the original debt, previously discharged in Chapter 7.[5]

The second argument is equally without merit. Congress alone is charged with the authority "to establish ... uniform laws on the subject of bankruptc[y]...." U.S. Const. Art. I, § 8, cl. 4. Such authority must necessarily be accompanied by the full authority to regulate all matters incident to, or arising from, such power. Thus, this authority is vested in federal courts with exclusive jurisdiction to adjudicate all questions regarding the rights, duties, obligations and interests of a debtor and his/her creditors. *In re Park*

*Beach Hotel Bldg.*, 96 F.2d 886 (7th Cir. 1938), *cert. denied*, 305 U.S. 638, 59 S.Ct. 105, 83 L.Ed. 411 (1938).

The natural result of such a grant of authority in part is that Congress is free, within the context of bankruptcy, to alter or affect a creditor's contract rights governed generally by state laws which would otherwise permit the creditor to enforce those rights. *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1403 (9th Cir.1986). *See also, Texaco, Inc. v. Liberty National Trust Co.*, 464 F.2d 389, 392 (10th Cir.1972) ("power of Congress to legislate in bankruptcy is superior to all state laws on the subject and may be exercised to exclude all conflicting proceedings in state or federal courts")(citations omitted).

While a full and complete discourse on the Supremacy Clause of the Constitution[6] is not necessary here, Supreme Court precedent is clear and unequivocal in affirming the supremacy of federal bankruptcy law over conflicting state law. In rejecting a challenge to the discharge of a debtor's personal liability under a state's motor vehicle financial responsibility laws, the Supreme Court rejected prior precedent which appeared to permit "state law [to] frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration" of the federal law in question. *Perez v. Campbell*, 402 U.S. 637, 651–652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971). In denouncing the attempted abrogation of certain federal laws by "purpose-driven" state enactments, the Court in *Perez* stated as follows:

Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify

---

**5.** The Creditor's argument is disingenuous as well, in the sense that the alternate value judgment obtained in the amount of $1,175.00 was for exactly the same amount listed by the creditor in its proof of claim as the secured portion of its claim. As noted above, *see* fn. 2 and accompanying text, *supra*, the Creditor and

Debtor stipulated that the collateral was essentially worthless; the Creditor did not want the collateral returned but wanted foremost to have its money judgment satisfied.

**6.** U.S. Const., Art. VI, cl. 2.

nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law.... [Such precedents can] have no authoritative effect to the extent they are inconsistent with the *controlling principle* that any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.

*Perez*, 402 U.S., at 652, 91 S.Ct. at 1712 (emphasis added).

## CONCLUSION

While the Bankruptcy Code exists for the benefit of the "honest but unfortunate" debtor, mechanisms do exist which protect a creditor's rights and interests within the confines of the Bankruptcy Code and forum. As noted above, *see* fn. 4, *supra,* a creditor may, among other remedies available, institute in this Court an adversary proceeding and thereby seek the following: (1) to have a debt determined nondischargeable; (2) object to a debtor's discharge; (3) seek to have the Court determine the validity, priority and extent of its lien relative to the collateral; (4) appropriate injunctive relief regarding any disposition of a creditor's collateral. Likewise, a creditor may, upon proper motion, be granted relief from the automatic stay or have the property abandoned by the trustee where appropriate.[7] A creditor has the further affirmative and timely duty under Rule 4003 to object to claimed exemptions of property.

 From the above, it is obvious that bankruptcy law controls all property interests of a debtor and his/her relationships with creditors. Therefore, to the extent that any state law conflicts with a Code provision, as is the case here, it is of no

force and effect, especially when such a law would have an adverse impact on a debtor's financial rehabilitation and fresh start by permitting creditors to obtain personal judgments in violation of the discharge injunctive order under the premise that it is in lieu of property when it is nothing more than an unsecured personal liability deficiency of its secured claim.

 In this instance, however, comments by Creditor's counsel appear to indicate that, at least in this case, Creditor did not act with specific intent to violate § 524(a). As represented to the Court at the hearing, the Creditor appears to have acted with the good-faith, albeit mistaken, belief that its actions were permissible.[8] Based on this finding, the Court reluctantly declines to impose sanctions for the Creditor's § 524(a) violations. However, subsequent actions by the creditor hereafter may so result.

From the foregoing, the Court hereby finds and concludes that the Debtor's motions are timely and properly before the Court; that the Debtor's claimed exemptions are allowed, no objections thereto having been lodged by the Creditor; that the Creditor's non-possessory, non-purchase money lien, which impairs the exemptions claimed, is void in its entirety, and the Debtor's underlying personal liability for such debt has previously been discharged. An order will accordingly be entered.

Service of a copy of this Memorandum Opinion shall be made by mail to the Debtor; counsel for Debtor; counsel for AVCO Financial Services; and the Trustee.

## *ORDER*

Pursuant to the Court's Memorandum Opinion this date entered, it is

---

7. Although the collateral at issue in this case was abandoned by the trustee, such action is of little effect in this instance because the property abandoned has been listed on the debtor's amended schedule and is exempt property.

8. The Creditor did stipulate that the practices exhibited by it in this case are part of an ongo-

ing corporate policy in dealing with consumer borrowers who do not attempt to avoid its liens after having sought bankruptcy protection. The Court's findings and decision herein do not deal with such allegations, though, since only the within Debtor is properly before the Court.

**ORDERED**

that the Debtor's Motions are timely and properly before the Court; that the Debtor's claimed exemptions are allowed; that AVCO Financial Services' ("AVCO") non-possessory, non-purchase money lien, which impairs the Debtor's exemptions, is hereby voided; that the Debtor's underlying personal liability for any indebtedness owing to AVCO was previously discharged by this Court's Discharge Order; that the Court declines to fix sanctions under the facts and circumstances of this case; however, costs in favor of the Debtor will be taxed including any attorney's fees that may be fixed by this Court upon proper application by the Debtor and hearing thereon.

Service of a copy of this Order shall be made by mail to the Debtor; counsel for Debtor; counsel for AVCO Financial Services; and the Trustee.