**In re Cathryn A. WEBB, Debtor.**

**Bankruptcy No. 96–10822–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 25, 1997.

---

See also 57 F.3d 1067.

Donald F. King, Odin Feldman & Pittleman, P.C., Fairfax, VA, Chapter 7 Trustee.

Thomas P. Gorman, Tyler Bartl Burke & Albert, P.L.L.C., Alexandria, VA, for debtors.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the chapter 7 trustee's objection to the debtor's claimed exemption of $25,000 paid in settlement of an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, as amended.[1] A hearing was held on February 25, 1997, at which the parties stipulated to the facts and agreed that the question was one of law for the court to determine. The court then took the matter under advisement to determine whether a Title VII employment discrimination suit is a "personal injury" claim of the type exempt

---

1. Title VII is codified in scattered sections of Title 42, United States Code, with the section

under Va.Code Ann. § 34–28.1. Because the debtor's cause of action in this case had been narrowed by the time it was settled so that the only damages available were of the type traditionally recoverable in personal injury actions, the court concludes that the settlement proceeds are exempt.

### Facts

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this court on February 21, 1996. On her schedules, she claimed as exempt under Va.Code Ann. § 34–28.1 the sum of $25,000 held in an account with Charles Schwab. On April 15, 1996, the trustee filed a report of no distribution, but withdrew the report the same day and filed the objection that is presently before the court. The debtor received a discharge on July 12, 1996.

It is stipulated that the $25,000 in the Charles Schwab account resulted from the settlement of a lawsuit brought by the debtor in the United States District Court for the Eastern District of Virginia on December 23, 1993, against her former employer, Baxter Healthcare Corporation ("Baxter"). The complaint asserted federal causes of action for employment discrimination based on gender, religion, and disability, as well as state law claims of wrongful discharge and intentional infliction of emotional distress. The complaint alleged that due to the various forms of discrimination, the debtor suffered from "frequent headaches, acute anxiety attacks, ulcers, and severe depression." The District Court granted summary judgment in favor of Baxter on all counts. On appeal, the United States Court of Appeals for the Fourth Circuit affirmed with respect to all the claims except the debtor's claim for gender discrimination under Title VII. *Webb v. Baxter Healthcare Corp.*, 57 F.3d 1067 (table), 1995 WL 352485 (4th Cir.1995) (unpublished).

In remanding, the Fourth Circuit took pains to distinguish between the debtor's claim that she was unlawfully fired and her claim of a hostile workplace environment

---

prohibiting employment discrimination found at 42 U.S.C. § 2000e–2.

leading to hospitalization for a nervous breakdown:

> Notwithstanding the propriety of her dismissal, the treatment Webb received while employed at Baxter can still violate Title VII. It is important to keep terminology straight here. This case does not involve "sexual harassment" ... but rather *gender discrimination*—Webb argues that [her supervisor] made her work life miserable because she is a woman....

Slip. op. at 8–9. Reviewing the summary judgment record, the Court held that "a reasonable jury could find that [the supervisor] ridiculed and demeaned Webb on account of her gender...." *Id.* at 10. The record included evidence that the debtor, as a result of the stress, was admitted to a psychiatric hospital in an obviously disordered state and remained there for twelve days. *Id.* at 5–6. When she did not return to work after the three days of medical leave her employer had authorized, she was fired. As the Fourth Circuit noted, "[s]omething drove this woman into drug abuse and deep depression, and a jury could reasonably find that it was something on the job." *Id.* at 10–11.

After remand, the parties entered into a settlement agreement in which the debtor received a cash payment of $165,000 for the release of all claims that she had against Baxter.[2] Among the numerous provisions of the settlement agreement is a recital that "[t]hese settlement funds shall be designated as *compensation for personal injury,* and no form W–2 or 1099 shall issue" and that the agreement "includes all claims by Webb for compensatory and common law damages, and includes any claim for attorneys' fees, court costs or other expenses incurred by Webb in pursuit of this claim ... [but] the alleged conduct does not give rise to punitive damages or *to damages for lost income.*" Joint Stipulation, Exh. C, at 2–3 (emphasis added).

The debtor and the trustee have stipulated that, consistent with the legal posture of the lawsuit at the time it was settled, the sole damages recoverable by the debtor in the action against Baxter were those allowable under 42 U.S.C. § 1981a(b)(3), which permits recovery for emotional pain, suffering, inconvenience, loss of enjoyment of life, other nonpecuniary losses, and for punitive damages, and that no cause of action remained under which she could recover damages for lost income or benefits of employment. Additionally, the parties have stipulated that, after remand of her case, the debtor had no causes of action cognizable under Virginia law.

### Conclusions of Law and Discussion

#### A.

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders or judgments may be entered by a bankruptcy judge.

The trustee's position is that debtor may not exempt the settlement proceeds as arising from a "personal injury" under Va.Code Ann. § 34–28.1. That statute, as discussed in more detail below, exempts "all causes of action for personal injury or wrongful death." The trustee argues that, after remand of the case from the Fourth Circuit, the debtor's only cause of action arose under Federal law and that the Virginia exemption statute applies only to personal injury claims recognized under state law. The trustee asks this court to apply the plain meaning of "personal injury" and rule that, while the debtor may have suffered some damages traditionally associated with a "personal injury" cause of action, the settlement proceeds do not arise from a "personal injury," as distinguished from an injury personal to the debtor.

The debtor's position is that the settlement proceeds are exempt since the settlement agreement expressly provided that the payment was in compensation for "personal inju-

---

**2.** The $25,000 that the debtor is claiming exempt

is agreed to be all that remains of the original

ries"[3] and since the underlying Title VII cause of action settled by the agreement sought recovery for damages that were in the nature of personal injury as that term is commonly understood. The debtor, not surprisingly, rejects the trustee's assertion that only causes of action under Virginia law are exempt under the Virginia statute. Finally, the debtor represents that, consistent with the terms of the settlement agreement, she did not report the funds received as income for tax purposes and that the Internal Revenue Service has not challenged her treatment of the payment.[4]

### B.

Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property. An individual debtor, however, may "exempt from property of the estate"—and thus retain, free from the claims of creditors—either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. § 522(b), Bankruptcy Code. A state is permitted, however, to "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va. Code Ann. § 34–3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general (nonbankruptcy) Federal law. *In re Smith,* 45 B.R. 100 (Bankr. E.D.Va.1984).

The state law exemptions available to Virginia residents are primarily set forth in Title 34, Va.Code Ann. Relevant to the issue before the court, Va.Code Ann. § 34–28.1 provides that "all causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement shall be exempt from creditor process against the injured person" subject only to certain statutory liens not relevant here. This provision, in a slightly different form,[5] was enacted in 1990 as part of a major revision of Virginia's exemption laws. Nowhere in Title 34, or for that matter anywhere else in the Code of Virginia, is the term "personal injury" defined.[6] The sole indication of legislative intent, apart from what can be gleaned from the bare language of the statute itself, is the following discussion from the legislative history:

> Finally, the joint subcommittee considered the adoption of a statutory exemption of personal injury causes of action. The Fourth Circuit Court of Appeals found in *Tignor v. Parkinson,* 729 F.2d 977 (1984), that because of changes in federal bankruptcy law, personal injury causes of action and their proceeds are (i) property of the bankrupt estate and (ii) entitled to exemption only under the homestead exemption

---

$165,000 settlement.

3. The court does not give controlling weight to the terms of the settlement agreement. The language of the agreement is self-serving and clearly structured to enable the debtor to exclude the payment from gross income under I.R.C. § 104 as a settlement "on account of personal physical injury." Instead, the court gives greater weight to the nature of the damages alleged by the debtor in light of the summary judgment record at the time the action was settled.

4. The debtor asserts that this is relevant because Internal Revenue Code ("I.R.C.") § 104 excludes from gross income amounts received on account of "personal physical injuries or physical sickness." I.R.C. § 104(a)(2). This issue is discussed in more detail below.

5. The original statute referred only to personal injury and not to wrongful death actions. After

the decision in *Krippendorf v. Cassell (In re Cassell),* 151 B.R. 78 (Bankr.W.D.Va.1993), *aff'd,* 158 B.R. 963 (W.D.Va.1993), *aff'd,* 23 F.3d 400 (4th Cir.1994), which held that "personal injury" did not include wrongful death, the statute was amended to its current form.

6. Virginia makes a distinction for statute of limitations purposes between causes of action for "personal injury" and "personal actions for which no limitation is otherwise prescribed." Va.Code Ann. §§ 8.01–243(A) and 8.01–248; *Purcell v. Tidewater Constr. Corp.,* 250 Va. 93, 458 S.E.2d 291 (1995) (wrongful termination of employment not a "personal injury" for statute of limitations purpose). In *Purcell,* the Virginia Supreme Court stated that, in determining which limitation applied, "we interpret 'injury' in the same manner as that word is construed to determine when a cause of action for personal injuries accrues: '[a] positive, physical or mental hurt to the claimant.'" *Id.* at 95, 458 S.E.2d at 293.

statute. Earlier bankruptcy court decisions had allowed the exemption of such causes of action under § 8.01–26 and common law.

The joint subcommittee decided that the Commonwealth's policy on this issue should reflect the intent of § 8.01–26 (prohibiting the assignment of personal rights of action) and the premise of personal injury awards which is to return the injured party to his pre-injury status. Under current law, the members offered, a creditor may have a right to the personal injury award compensating a debtor for the loss of his hand even where the creditor has no right to levy on the hand. The joint subcommittee's recommendation, therefore establishes a statutory exemption for all causes of action for personal injury and the proceeds derived from any court award or settlement.

REPORT OF THE JOINT SUBCOMMITTEE STUDYING VIRGINIA'S EXEMPTION STATUTES, House Doc. No. 77, at 10–11 (1990). Again, however, no definition of what constitutes a "personal injury" cause of action is provided. The court can only conclude, therefore, that the General Assembly meant the term "personal injury" to have its normal, everyday meaning. *See Bell v. Dorey Elec. Co.,* 248 Va. 378, 382, 448 S.E.2d 622, 624, (1994) (turning to Black's Law Dictionary and Webster's for the everyday meaning of terms of a statute); *see also Lumbermen's Mut. Casualty Co. v. Keller,* 249 Va. 458, 460–61, 456 S.E.2d 525, 526 (1995) (looking to Black's Law Dictionary and Webster's Dictionary for the everyday meaning of a term of an insurance policy).

The term "personal injury" has been defined as:

> In a narrow sense, a hurt or damage done to a man's *person,* such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation. The phrase is chiefly used in this connection with actions of tort for negligence and under worker's compensation statutes. *But the term is also used (usually in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights,* and in this signification it may include such injuries to the person as libel or slander, criminal conversation, malicious prosecution, false imprisonment and mental suffering.

BLACK'S LAW DICTIONARY 786 (6th ed.1990) (citation omitted) (emphasis added). *See Bailey v. Whaples,* 435 S.W.2d 626, 628 (Tex. Civ.App.1968) ("The term 'personal injury' has no distinctive legal meaning other than the meaning generally attributed to the term. It is broad and inclusive of all types of injury a person might receive"). Webster's does not provide a definition of the term "personal injury," as such, but it does define its component parts. "Injury" is defined as "an act that damages or hurts" or "a violation of another's rights for which the law allows an action to recover damages"; "personal" is defined in part as "of, relating to, or affecting a person[,]" "relating to the person or body" or "relating to an individual or an individual's character, conduct, motives, or private affairs often in an offensive manner." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 602, 867 (10th ed.1995).

In *Niedermayer v. Adelman,* 90 B.R. 146 (D.Md.1988) (Niemeyer, J.) the court was faced with a Maryland statute that exempted from execution "[m]oney payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings." Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(2). The issue was whether the debtor's pending lawsuit against his former employer that included claims for false imprisonment, malicious prosecution, invasion of privacy, defamation, and intentional inflection of emotional distress was exempt as an "injury ... of any person." As here, the bankruptcy trustee argued that the term "injury," read in context, could only mean physical or bodily injury. The court, however, while distinguishing between actions for injury to the property of a debtor and "injury to the person proper," 90 B.R. at 149, declined to limit the latter to bodily injury:

> Once it is recognized that personal injury claims, as opposed to property claims, form the basis of distinction, the identification of whether the injury is limited to bodily injury, or may include injury to the mind or psyche, is not a difficult issue.

Unless the statute were to limit the claim to bodily injury it is difficult to assume that the person does not include both body and psyche.

Mental anguish, damage to reputation, and damages caused by false imprisonment and malicious prosecution are therefore equally injury to the person. Had the Maryland legislature intended to limit the exemption to claims for bodily or physical injury it would have so limited the provision.

*Id.* The court therefore concluded that "in the absence of a restriction in the ... statute, claims for injury of the person encompass claims for damage to his psyche, including mental anguish and damage to reputation." *Id.*

■ In the present case the court is confronted with conflicting principles of statutory construction. On the one hand, it is well-settled that in interpreting Virginia exemption statutes, a court must do so liberally in favor of the debtor, with any doubts to be resolved in favor of allowing the exemption. *See Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir.1984), *citing South Hill Production Credit Assn. v. Hudson*, 174 Va. 284, 6 S.E.2d 668 (1940) and *Atlantic Life Ins. Co. v. Ring*, 167 Va. 121, 187 S.E. 449 (1936); *In re Hayes*, 119 B.R. 86, 88 (Bankr.E.D.Va.1990) (Shelly, J.) (exemption statutes are to be "liberally construed so as to afford the relief which the legislature intended the debtor to enjoy"); *In re Perry*, 6 B.R. 263, 264 (Bankr.W.D.Va.1980) (Pearson, J.); *In re Williams*, 3 B.R. 244, 246 (Bankr. E.D.Va.1980) (Shelly, J.). Just as importantly, however, a court must apply the plain meaning of a statute, and in particular, may not enlarge a statutory exemption and read into it an exemption the legislature did not intend to create. *See Tignor*, 729 F.2d at 981 (citing *Goldburg Co. v. Salyer*, 188 Va. 573, 582, 50 S.E.2d 272, 277 (1948)); *Cassell,*

151 B.R. at 81 (citing *United States v. Ron Pair Enterprises Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)). Given this backdrop, the court gives vitality to both principles—by liberally interpreting the plain meaning of Va.Code Ann. § 34–28.1.

■ Virginia is one of 25 states that allow some form of exemption in personal injury or wrongful death actions.[7] Some states (e.g., California) limit the exemption to the extent necessary for support; some (e.g., Missouri) provide an exemption only for the wrongful death of a person of whom the debtor was dependent; some set a cap on the amount that may be exempt, ranging anywhere from $7,500 (e.g., Georgia) to $50,000 (e.g., Oklahoma); some allow exemptions only for personal *bodily* injury (e.g., New York). Suffice it to say there are a wide range of limitations that the various states have put on an exemption to proceeds arising from a personal injury. The Virginia statute, by contrast, contains no language limiting the dollar amount of the exemption or specifically restricting it to bodily injury. *See* 14 COLLIER'S ON BANKRUPTCY VA–1 (Lawrence P. King ed., 15th ed. rev.1996) (stating simply that claims for negligence and tortious conduct in Virginia are exempt). Given that other states have used statutory language specifically allowing exemption only of a cause of action for personal *bodily* injury, it seems reasonable to conclude that had the General Assembly intended to be equally restrictive, it would have said so—particularly as one of the commonly accepted definitions of "personal injury," as noted above, includes "any injury which is an invasion of personal rights." Accordingly, the court is constrained to reject the argument that the plain language of the statute shows that the General Assembly intended to exempt only causes of action for bodily injuries.[8]

---

7. These states include: Alaska, California, Colorado, Georgia, Idaho, Illinois, Kentucky, Maine, Maryland, Minnesota, Mississippi, Missouri, Nebraska, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, Utah, Vermont, Virginia, and West Virginia. For the applicable statute in each state, *see* 14 COLLIER ON BANKRUPTCY (Lawrence P. King ed., 15th ed. rev.1996).

8. During oral argument, debtor's counsel urged the court to follow the reasoning of *In re Kininson*, 177 B.R. 632 (Bankr.E.D.Mo.1995). In *Kininson*, the debtor exempted under Mo.Rev.Stat. § 513.427, a claim for sexual harassment. The Missouri statute allowed the exemption in bankruptcy of "any property exempt from attachment and execution under the law of the state of Missouri." *Id.* at 633–34. Under Missouri com-

## C.

The court believes that the next step in the analysis to determine whether proceeds arising from a Title VII gender discrimination action are exempt as a "personal injury" claim is to compare the damages recoverable under Virginia law for personal injury to those recoverable under Title VII. Under Virginia law, damages recoverable for personal injury include compensation for (1) any bodily injuries sustained by the plaintiff, (2) any physical pain and mental anguish suffered in the past and that the plaintiff may reasonably be expected to suffer in the future; (3) any disfigurement or deformity and any associated humiliation or embarrassment; (4) any inconvenience caused in the past and any that may reasonably be expected to occur in the future; (5) any medical expenses incurred in the past and any that may reasonably be expected to occur in the future; (6) any earnings lost because the plaintiff was unable to work at his or her calling; (7) any loss of earnings and lessening of earning capacity, or either, that the plaintiff may reasonably be expected to sustain in the future; and (8) property damage. *Musick v. United States*, 781 F.Supp. 445, 450–51 (W.D.Va.1991); *Weatherford v. Birchett*, 158 Va. 741, 746–47, 164 S.E. 535, 537 (1932) (allowable damages include compensation for insult, pain, humiliation, and mental suffering).

Prior to 1991, the primary relief available to a plaintiff in a Title VII intentional discrimination action[9] was equitable in nature (e.g., an injunction prohibiting the employer from engaging in unlawful employment discrimination or requiring the reinstatement of the employee discriminated against), and the only monetary damages recoverable were an award of back pay. *See* 42 U.S.C. § 2000e-5(g). The Civil Rights Act of 1991[10] amended Title VII to permit victims of intentional discrimination to recover compensatory damages, subject to caps based on the number of employees, which are not relevant here. *See* 42 U.S.C. § 1981a(a)(1). The compensatory damages that are recoverable include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Id.* at § 1981a(b)(3). As noted above, all of these categories of damages would also be recoverable in a personal injury action under Virginia law.

## D.

Given the specific facts of this case, and in particular the legal posture of the debtor's lawsuit after remand from the Fourth Circuit, the court concludes that the payment she received from Baxter in settlement of her claim constitutes proceeds derived from settlement of a cause of action for personal injury, as that term is used in Va. Code Ann. § 34–28.1, and is therefore exempt. In reaching that conclusion, the court need not decide the more difficult issue of whether all Title VII causes of action are exempt. After remand from the Fourth Cir-

---

mon law, this includes interests that are non-assignable, such as causes of action for a personal injury. *Id.* at 634. The court held, however, that not all the items of damages recoverable in a personal injury action would be exempt. Any recovery for "embarrassment, medical expenses, emotional distress or similar harms" is considered an interest not assignable, and would be exempt; any recovery for "loss of wages or punitive damages" would be considered an assignable property interest and available for distribution to creditors. *Id.* at 635. While the facts in *Kininson* are analogous to those presented here, the dichotomy between assignable and non-assignable causes of action is not directly relevant to the Virginia exemption scheme. Even though the legislative history reflects that Va.Code Ann. § 34–28.1 was enacted in part to implement, and to be consistent with, Virginia's long-standing prohibition on assignment of personal injury causes of action, Virginia nevertheless has no general rule, comparable to Missouri's, that exempts the proceeds of non-assignable causes of action.

9. Title VII distinguishes between disparate treatment, or intentional discrimination, and disparate impact discrimination, or de facto discrimination. The Civil Rights Act of 1991 only provides recovery of compensatory damages to those who suffered intentional discrimination. *See* 42 U.S.C. § 1981a(a)(1). Here, the court notes that the allegations of the debtor in the discrimination action concerned intentional discrimination. Accordingly, the court finds that the payment was in settlement of a claim for compensatory damages arising from intentional discrimination.

10. Pub.L. No. 102–166, 105 Stat. 1071 (1991).

cuit, the sole viable claim the debtor had against Baxter was one for a hostile workplace environment under Title VII.[11] The parties have stipulated that the only damages recoverable after the remand were for compensatory damages allowable under 42 U.S.C. § 1981a(b)(3) and that she had no right to recover lost income or employment benefits. The claim asserted by the debtor included not merely mental anguish but a mental breakdown that required inpatient medical treatment in a psychiatric hospital. The damages that the debtor was eligible to recover on account of that claim are the same kind of damages recoverable in a personal injury action under Virginia law. In light of the broad definition of "personal injury," as discussed above, the court determines that, at least on the facts of this case, the Virginia legislature contemplated that recovery for this type of injury is exempt from creditor process under § 34–28.1.

■ This result is fully in harmony with the policy behind the exemption at issue here. The legislative history to Va.Code Ann. § 34–28.1 reflects a concern that "the premise of personal injury awards … is to return the injured party to his pre-injury status" and that a creditor should not "have a right to the personal injury award compensating a debtor for the loss of his hand … where the creditor has no right to levy on the hand." REPORT OF THE JOINT SUBCOMMITTEE STUDYING VIRGINIA'S EXEMPTION STATUTES, *supra.* An exemption for proceeds arising from a personal injury is designed to shield from creditor process something that the creditors never could attach in the first place. The debtor's Federally-guaranteed right under Title VII to be free from a hostile workplace environment is not an asset that could have been levied on by a creditor. To the extent that a court judgment or settlement simply compensates the victim of such conduct for lost wages, the funds received by the debtor would presumably not be exempt.

But that is not the situation here. The debtor's only remaining cause of action at the time she settled with Baxter was essentially for injury to her peace of mind and mental equilibrium, not lost wages or other types of economic loss.

### E.

■ The court briefly addresses two additional arguments the trustee has raised. First, the trustee argues that only those personal injury actions arising under Virginia law are exempt. In addition, the trustee asserts that in order to find that Title VII injuries are exemptible, this court would have to determine that the Virginia legislature, in enacting Va.Code Ann. § 34–28.1 in 1990, specifically contemplated that a Title VII cause of action would be exempt—a difficult feat chronologically, since it was not until 1991 that Title VII was amended to allow recovery of "traditional" personal injury damages. However, the plain language of the statute does not distinguish between state and Federal causes of action, or between those recognized at the time the statute was enacted, and those subsequently recognized: it states simply that *all* personal injury causes of action are exempt from creditor process. The use of the descriptive qualifier "all" and the lack of any limiting language strongly suggests that the General Assembly did not intend to create an exemption solely limited to state law causes of action or to those causes of action expressly recognized at the time the statute was enacted. In short, the court believes the General Assembly intended that the nature of the injury, not the theory of recovery, would determine whether the exemption applied.

The trustee argues finally that this court should follow the reasoning of cases that have examined whether a Title VII award may be excluded from gross income under

---

11. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). As the District Court for this district has explained:

> To prove a "hostile work environment" claim a plaintiff must show (1) the conduct in question was unwelcome; (2) the harassment was based

on sex; (3) the harassment was sufficiently pervasive or severe enough to create an abusive environment; and (4) some basis exists for imputing liability to the employer.

*Guiden v. Southeastern Pub. Serv. Auth.,* 760 F.Supp. 1171, 1178 (E.D.Va.1991) (Doumar, J.).

I.R.C. § 104 [12] and should find that Title VII awards are not in the nature of personal injury. Putting aside the fact that § 104 uses the somewhat different language "personal *physical* injuries or *physical* sickness" rather than "personal injury," it is by no means clear that Congressional intent expressed in the context of a tax statute would necessarily parallel the Virginia General Assembly's intent in the context of an exemption statute. Put another way, since taxes are the life-blood of government, it would be unusual if a tax statute were liberally construed in favor of the taxpayer. Nevertheless, the reported Supreme Court decisions are by no means inconsistent with the result reached in this case. In *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), the Court held that back pay awards received in settlement of a Title VII claim are not excludable from gross income under I.R.C. § 104. While *Burke* was decided before the effective date of the Civil Rights Act of 1991,[13] the Court's analysis is nevertheless instructive. The Court first reasoned that for purposes of I.R.C. § 104, a court must look at the nature of the claim underlying the damage award, and that in order to fall under the § 104(a)(2) exclusion from income, the award must redress tort-like personal injury claims. *Burke,* 504 U.S. at 237, 112 S.Ct. at 1872. The Court then stated:

> [O]ne of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff "fairly for injuries caused by the violation of his legal rights." ...
>
> Indeed, in contrast to the tort remedies for physical and nonphysical injuries discussed above, Title VII does not allow awards for compensatory or punitive damages; instead, it limits available remedies to backpay, injunctions, and other equitable relief.... Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury,

such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (e.g., a ruined credit rating).

> No doubt discrimination could constitute a "personal injury" for purposes of § 104(a)(2) if the relevant cause of action evidenced a tort-like conception of injury and remedy.... Indeed, the circumscribed remedies available under Title VII stand in marked contrast not only to those available under traditional tort law, but under other federal antidiscrimination statutes, as well. For example, ... 42 U.S.C. § 1981, permits victims of race-based employment discrimination to obtain a jury trial at which "both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages" may be awarded.

*Id.* at 235–40, 112 S.Ct. at 1871–74 (citations, footnote and original sources omitted). Given the fact that Title VII now permits recovery of noneconomic damages, coupled with the fact that the debtor's causes of action for lost pay had all been resolved against her at the time she settled with Baxter, the decision in *Burke* is hardly support for the trustee's argument that the settlement proceeds would not be treated for tax purposes as being "on account of" a personal injury. *See Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (although an Age Discrimination in Employment Act case, the opinion notes that "the *Burke* Court recognized as the primary characteristic of an 'action based upon ... tort type rights': the availability of compensatory remedies.") (alteration in original).

### F.

For the purpose of this opinion it is not necessary to decide whether employment discrimination suits in general are exempt under Va.Code Ann. § 34–28.1. It is sufficient in this case that the debtor's Title VII action, narrowed as a result of summary judgment,

---

12. Internal Revenue Code § 104 states in relevant part that "gross income does not include ... the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness[.]"

13. *See Burke,* 504 U.S. at 238 n. 8, 112 S.Ct. at 1872 n. 8.

sought recovery for conduct that she claimed resulted in her nervous breakdown and psychiatric hospitalization, and that, at the time the lawsuit was settled, she had no remaining claim for purely economic damages, such as lost wages. Given the liberal construction that must be given to exemption statutes, the debtor's claim easily falls within the perimeter of a "personal injury" action, as that term is commonly used. Accordingly, a separate order will be entered overruling the trustee's objection and allowing the debtor's claimed exemption.