In re Cathryn A. WEBB, Debtor.

Donald F. KING, Trustee, Appellant,

v.

Cathryn A. WEBB, Appellee.

Bankruptcy No. 96–10822–SSM.

C.A. No. 97–0641–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 6, 1997.

Frances P. Dwornik, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Trustee.

Thomas P. Gorman, Tyler, Bartl, Burke & Albert, P.L.C., Alexandria, VA, for Appellee.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this bankruptcy appeal is whether the proceeds of a Title VII settlement are exempt from federal creditor process pursuant to Virginia Code § 34–28.1., which allows exemptions for the proceeds of "personal injury" actions.

### I.

The dispositive facts are undisputed. They begin in December 1993, more than two years before the bankruptcy filing, when the debtor sued her former employer Baxter Healthcare Corporation ("Baxter") for employment discrimination based on gender, re-

ligion, and disability,[1] as well as state law claims of wrongful discharge and intentional infliction of emotional distress. The complaint alleged that as a direct and proximate result of Baxter's discriminatory conduct, debtor suffered from "frequent headaches, acute anxiety attacks, ulcers, and severe depression." Initially, Baxter won summary judgment on all counts. On appeal, the Fourth Circuit Court of Appeals affirmed with respect to all claims except the debtor's claim for hostile environment under Title VII. *Webb v. Baxter Healthcare Corp.*, No. 94–1784, 1995 WL 352485 (4th Cir. June 13, 1995). In remanding this claim, the Fourth Circuit concluded that a reasonable jury could have found discrimination against debtor on account of her gender. In reaching this conclusion, the panel opinion noted that "[s]omething drove this woman into drug abuse and deep depression, and a jury could reasonably find that it was something on the job." 1995 WL 352485 at *5.

Following remand, the debtor and Baxter entered into a settlement agreement whereby the debtor received a cash payment of $165,000 for the release of all claims against her former employer. The settlement agreement provides that "[t]hese ... funds shall be designated as compensation for personal injury," and further states that the settlement "expressly includes all claims by ... [the debtor] for compensatory and common law damages." Continuing, the agreement provides that "[i]t is further understood that the parties agree the alleged conduct does not give rise to punitive damages or to damages for lost income."

After the settlement, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 701 *et seq.* In her petition, she claimed as exempt from creditor process under Va.Code § 34–28.1 the sum of $25,000 held in an account with Charles Schwabb. This $25,000 is apparently all that remains of the $165,000 settlement with Baxter.

■ Donald King, the Chapter 7 trustee, filed a timely objection to the claimed exemption. After hearing oral argument the bankruptcy court overruled the trustee's objection, and held that Virginia's bankruptcy exemption for the proceeds of a personal injury cause of action, Virginia Code § 34–28.1, entitled debtor to an exemption for the remaining settlement funds. *In re Webb*, 210 B.R. 266, 275 (Bankr.E.D.Va.1997). It is from this holding that the trustee appeals.[2]

## II.

Section 541 of the Bankruptcy Code provides in pertinent part that the filing of a bankruptcy petition creates an "estate" composed of all the legal and equitable interests of the debtor. 11 U.S.C. § 541. While the Code sweeps broadly in fashioning the estate, it also provides federal exemptions for debtors, such that suitable property may be retained, free from the claims of creditors. 11 U.S.C. § 522(b). Yet, each state is permitted to "opt out" of the federal exemption scheme, and require its debtors to utilize only state exemptions in bankruptcy cases. 11 U.S.C. § 522(b)(1). Virginia opted out,[3] establishing instead its own set of exemptions, including an exemption for the judgment or settlement proceeds from "all causes of action for personal injury or wrongful death." Va.Code § 34–28.1. This provision, in a slightly different form,[4] was enacted in

---

1. The complaint alleged violations of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, and Title I of the Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. § 12101 *et seq.* Specifically, the complaint asserted the following federal claims: (1) gender discrimination in the course of employment in violation of Title VII, (2) religious discrimination in the course of employment in violation of Title VII, (3) retaliation for engaging in protected conduct in violation of Title VII, (4) discrimination in the termination of employment in violation of Title VII, (5) discrimination in the course of employment in violation of the ADA,

and (6) discrimination in the termination of employment in violation of the ADA.

2. Because the holding involves the bankruptcy court's application of the law, appellate review is *de novo*. *In re Stanley*, 66 F.3d 664, 667 (4th Cir.1995).

3. *See* Va.Code § 34–3.1.

4. The original statute referred only to personal injury and not to wrongful death actions. After the decision in *In re Cassell*, 151 B.R. 78 (Bankr. W.D.Va.1993), *aff'd Cassell v. Krippendorf*, 158

1990. Accordingly, because debtor's Title VII gender discrimination claim was all that remained after remand, the question presented, therefore, is whether debtor's Title VII "hostile environment" settlement proceeds qualify for the § 34–28.1 exemption.[5]

■ Analysis properly begins with the terms of the statute. As it happens, the phrase "personal injury" is not specifically defined in the Virginia Code. In these circumstances, it is well settled that in the absence of a specific statutory definition, courts should be guided by the term's or phrase's plain and ordinary meaning, *i.e.*, its dictionary meaning. *See, e.g., Bell v. Dorey Elec. Co.*, 248 Va. 378, 448 S.E.2d 622 (1994)(referring to Black's Law Dictionary and Webster's to define terms of a statute); *Knodel v. Dickerman*, 246 Va. 124, 431 S.E.2d 323 (1993)(same); *Hensley v. City of Norfolk*, 216 Va. 369, 218 S.E.2d 735 (1975)(same).

This principle, applied here, points persuasively to the conclusion that a discrimination injury falls within the category of a "personal injury." For example, the term "personal injury" is defined in Black's Law Dictionary as, "[i]n a narrow sense, a hurt or damage done to a man's person .... [b]ut the term is also used (usually in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights ..." BLACK'S LAW DICTIONARY 786 (6th ed.1990). This definition, in both its narrow and wide senses, fits perfectly the settlement in issue; in a broad sense, intentional discrimination in violation of Title VII is clearly an invasion of the victim's "personal rights" [6]; more narrowly, the "frequent headaches, acute anxiety

attacks, ulcers and severe depression" debtor allegedly suffered as a result of the discrimination plainly amounts to "hurt or damage done to [the debtor's] person."

Reference to Webster's Dictionary yields the same result. Although the phrase "personal injury," as such, is not defined in Webster's, the phrase's component terms are. "Injury" is there defined as a "wound or other specific damage," or "[a] wrong or damage done to a person or his or her property, reputation, or rights when caused by the wrongful act of another"; "personal" is defined as "[o]f or relating to a particular person," "[d]one to or for or directed toward a particular person," or "[c]oncerning a particular individual's intimate affairs, interests, or activities." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 629, 877 (1984). These definitions, like Black's, fit well the alleged discrimination injury—"frequent headaches, acute anxiety attacks, ulcers, and severe depression"—for which debtor received the settlement.

■ Further confirmation that Title VII injuries may include "personal injuries" comes from the nature of the harms for which the statute provides a remedy. In addition to the traditional back pay and front pay remedies that may be available in appropriate circumstances, the statute, as amended in 1991, also permits recovery for "emotional pain, suffering, mental anguish, inconvenience, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). In allowing recovery for these harms, Title VII provides a remedy for precisely the same kinds of harms as do other Virginia personal injury

B.R. 963 (W.D.Va.1993), *aff'd In re Cassell*, No. 93–2246, 1994 WL 177416 (4th Cir. May 11, 1994), which held that "personal injury" under § 34–28.1 did not include wrongful death claims, the statute was amended to include such claims.

5. Arguably,, the settlement encompassed not only debtor's gender discrimination claim, but also debtor's right to appeal the Fourth Circuit's dismissal of all other claims to the Supreme Court. Yet, given the Fourth Circuit's firm dismissal of these claims, the argument is unpersuasive. Further, construing debtor's settlement in this fashion would require courts to undertake the

difficult, perhaps impossible, task of apportioning the settlement proceeds among all of the various claims.

6. This construction is consistent with Virginia's settled policy of liberally construing exemption statutes, so as to resolve any doubts in favor of the debtor. *South Hill Production Credit Ass'n v. Hudson*, 174 Va. 284, 6 S.E.2d 668, 669 (1940)(exemption privileges allowed by statute are to be liberally construed); *Atlantic Life Ins. Co. v. Ring*, 167 Va. 121, 187 S.E. 449 (1936)(same).

causes of action.[7] It follows that where, as here, a Title VII recovery is limited to these injuries or harms,[8] it should be accorded the same treatment under Va.Code § 34–28.1 as is a common law tort recovery for the same injuries or harms. Both are recoveries for "personal injuries" entitled to be exempted from the bankruptcy process.

The result reached here is also consistent with the application Virginia's venerable "mischief rule" of statutory construction, a rule based on the principle that statutes should be construed to accomplish their purpose. According to the rule, statutory purpose is ascertained by examining "the common law before the making of the Act" to find "the mischief and defect for which the common law did not provide," which, because it is the "[t]rue reason for the remedy," elucidates the breadth or scope of the "remedy," *i.e.*, the statute. *See Board of Supervisors of King and Queen County v. King Land Corp.*, 238 Va. 97, 380 S.E.2d 895, 897 (1989); *Bulala* 389 S.E.2d at 674. The rule, in essence, teaches that remedial statutes, like § 34–28.1, should be liberally construed so as to "suppress the mischief and advance the remedy" as the legislature intended. *Id.*

The "mischief" here came to light in *Tignor v. Parkinson*, 729 F.2d 977 (4th Cir. 1984), which held that the common law did not exempt personal injury actions or potential recoveries from the bankruptcy process. It had been thought otherwise prior to *Tignor*, because courts had considered that Virginia's prohibition on the assignability of personal actions operated to exclude such actions and potential recoveries from creditor process.[9] The General Assembly of Virginia acted promptly to remedy this by enacting § 34–28.1, thereby creating a statutory exemption for all personal injury actions and any resulting proceeds therefrom. As evidenced by legislative history, the statute was apparently designed to reflect the policy of Virginia Code § 8.01–26, such that all actions for personal injury unassignable under § 8.01–26 are likewise exempt from creditor process under § 34–28.1.[10] As with any personal tort action for which damages are limited to emotional pain, suffering, mental anguish, and the like, debtor's right of action under Title VII for a hostile environment was not assignable. It follows then, that the proceeds recovered to remedy a violation of that right appropriately fall within the class of injuries exempt from creditor process.

The trustee, in opposition to the result reached here, places primary reliance on two cases: *In re Crawford*, 208 B.R. 924 (Bankr.

---

**7.** *See Bulala v. Boyd*, 239 Va. 218, 389 S.E.2d 670 (1990)(listing damages recoverable for personal injury to include physical pain, mental anguish, inconvenience, humiliation). A particularly apt analogy is the Virginia tort of intentional infliction of emotional distress. *See Russo v. White*, 241 Va. 23, 400 S.E.2d 160 (1991). In common parlance, it is undeniably an action for personal injury which would fall within the scope of § 34–28.1. Such an action is also essentially similar to a Title VII action for hostile environment seeking only damages for mental anguish. Both actions are essentially intentional torts that allow recovery for the same harms or injuries. Both should receive the same treatment under § 34–28.1.

**8.** No part of the debtor's settlement here is attributable to back or front pay. Thus, neither presented nor resolved here is the question whether a Title VII recovery for back pay or front pay would be exempt from creditor process under Virginia Code § 34–28.1. Also not presented or resolved is the question whether punitive damages recovered on a personal injury claim is

exempt from creditor process under § 34–28.1. The parties to the settlement agreement stipulated that the conduct alleged did not warrant punitive damages, nor is there reason on this record to doubt or look behind this stipulation.

**9.** Virginia Code § 8.01–26 provides that "[o]nly those causes of action for damage to real or personal property ...: and causes of action ex contractu are assignable." Courts construing the statute concluded that personal injury actions not reduced to judgment or settled before the filing of the bankruptcy petition were not subject to creditor process. *See In re Musgrove*, 7 B.R. 892 (Bankr.W.D.Va.1981); *In re Tignor*, 21 B.R. 219, 220–223 (Bankr.E.D.Va.1982) *aff'd in part, vacated in part Tignor v. Parkinson*, 729 F.2d 977 (4th Cir.1984).

**10.** *See* REPORT OF THE JOINT SUBCOMMITTEE STUDYING VIRGINIA'S EXEMPTION STATUTES TO THE GOVERNOR AND THE GENERAL ASSEMBLY OF VIRGINIA at page 11, House Document Number 77 (May 1990)(noting that Virginia's policy on a personal injury exemption should reflect the intent of § 8.01–26).

D.Minn.1994), and *United States v. Burke*, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). Yet, neither case can bear the weight the trustee places on them. First, *In re Crawford* is inapposite and hence unpersuasive. It held that proceeds from a debtor's Title VII action were not exempt from creditor process under Minnesota law, which is different from § 34–28.1. The Minnesota statute exempts "[r]ights of action for injuries to the person of the debtor , . . whether or not resulting in death." Minn.Stat. § 550.37, subd. 22. Given this language, which is not found in Virginia Code § 34–28.1,[11] federal bankruptcy courts construing the Minnesota statute have consistently limited the scope of the exemption to rights of action for "actual bodily injury, such as a cut, bruise, or broken limb."[12] Following this narrow construction, the bankruptcy court in *In re Crawford* held that the exemption did not extend to proceeds from settlement of an action[13] that included a Title VII gender discrimination claim for pain and suffering. Even assuming the bankruptcy court there correctly divined Minnesota law, the result is not persuasive here given the differences in the statutes. Moreover, given Virginia's settled policy of liberally construing exemption statutes in favor of the debtor, there is no reason to believe that Virginia courts would construe § 34–28.1 as narrowly as Minnesota bankruptcy courts have construed that state's "personal injury" exemption.

The trustee is similarly mistaken as to the effect of *Burke*, where the Supreme Court held that back pay awards received in settlement of Title VII claims were not "damages received on account of personal injuries," and hence not excludable from gross income under Internal Revenue Code § 104. 504 U.S. at 242, 112 S.Ct. at 1874–75.[14] Because Title VII, prior to the Civil Rights Act of 1991, provided only remedies of back pay, injunctions, and other equitable relief, the Supreme Court held that Title VII was not a sufficiently tort-like claim to fall under the exclusion provisions of the IRS Code. *Id.* at 237–241, 112 S.Ct. at 1872–1874.[15] Yet, where, as here, what is in issue is a tort-like recovery for mental anguish and pain and suffering under the amended version of Title VII, reliance on *Burke*'s blanket characterization of the former Title VII remedies is misplaced. Indeed, the *Burke* decision concedes as much, suggesting that its characterization of the Title VII action would have been different had the 1991 amendments to the Act

---

**11.** Section 34–28.1 refers to "causes of action for personal injury **or** wrongful death," inviting the inference that Virginia intended § 34–28.1 to exempt two distinct types of actions from creditor process, neither of which would define or limit the other.(emphasis added). That § 34–28.1 was only recently amended to include wrongful death claims bolsters the conclusion that such claims are viewed as distinct from the category of "personal injury." By contrast, the phrase in the Minnesota statute, "whether or not resulting in death," contemplates that wrongful death actions are a subset of personal injury actions and that the nature of the subset serves to define or limit what is meant by "personal injury" in the Minnesota statute.

**12.** *See In re Babcock*, 44 B.R. 521 (Bankr. D.Minn.1984); *In re Maranda*, 208 B.R. 467 (Bankr.D.Minn.1994); *In re Marshall*, 208 B.R. 690 (Bankr.D.Minn.1997).

**13.** In addition to the Title VII claim, the complaint referred to in *In re Crawford* also alleged: (1) discrimination in the course of employment in violation of the Americans with Disabilities Act, (2) sex, marital status, and disability dis-crimination in violation of the Minnesota Human Rights Act, and .(3) common law defamation.

**14.** Internal Revenue Code § 104 provided in relevant part that "gross income does not include . . . the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."

**15.** The Supreme Court concluded that the proper focus for purposes of IRC § 104 was on the nature of the claim underlying the award or settlement, and specifically, whether the claim "redresses a tort-like personal injury." 504 U.S. at 237, 112 S.Ct. at 1872. To determine whether Title VII was sufficiently tort-like in nature, such that a resulting settlement or award would be excluded from gross income, the Supreme Court focused on the remedies available to a Title VII claimant. It noted that "one of the hallmarks of a traditional tort liability is the availability of a broad range of damages to compensate the plaintiff 'fairly for injuries caused by the violation of his legal rights.' " *Id.* at 235, 112 S.Ct. at 1871 (citation omitted). The Civil Rights Act of 1991 changed Title VII such that it now reflects a

been applicable.[16] Following this suggestion, at least one court since *Burke* has held that under the *Burke* analysis, proceeds from a post–1991 Act Title VII settlement are excludable from gross income under IRC § 104. *Stender v. Lucky Stores,* No. 88–1467, 1993 WL 557652 (N.D.Cal. Dec. 15, 1993). The *Burke* decision, then, to the extent that it is relevant to the issue presented here,[17] supports the conclusion that where, as here, a Title VII recovery is limited to traditional tort-like harms, the discrimination injury may fall within the broader category of a "personal injury."

For the reasons here stated, the bankruptcy court is **AFFIRMED**, and an appropriate Order has issued.

traditional tort-like conception of injury and remedy.

16. "We believe that Congress' decision to permit jury trials and compensatory and punitive damages under the amended Act signals a marked change in its conception of the injury redressable by Title VII." *Burke,* 504 U.S. at 241 n. 12, 112 S.Ct. at 1874 n. 12.

17. As the bankruptcy court correctly noted, "it is by no means clear that Congressional intent expressed in the context of a tax statute would necessarily parallel ... Virginia['s] ... intent in the context of an exemption statute. Put another way, since taxes are the life-blood of the government, it would be unusual if a tax statute were liberally construed in favor of the taxpayer." *In re Webb,* 210 B.R. at 275.