**In re John Edward HASSE, Debtor.**

**Bankruptcy No. 99–80726–SSM.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

March 2, 2000.

Robert Ross Weed, Alexandria, Virginia, for debtor.

James F. Reynolds, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Donald F. King, Chapter 7 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

The issue before the court is whether the debtor, who as a Federal employee participates in the Federal Thrift Savings Plan, may also, under the relevant Virginia exemption statute, claim an unlimited exemption in an individual retirement account ("IRA"). The controversy comes before the court on an objection by the chapter 7 trustee, Donald F. King, to the debtor's claimed exemption of the IRA.[1] A hearing was held on December 14, 1999. The chapter 7 trustee was present in person, and the debtor was present by his attorney. For the reasons stated herein, the court concludes that the debtor is entitled to hold the full amount of his IRA as exempt.

### Background

The relevant facts are not disputed and may be briefly summarized. The debtor, John Edward Hasse, is employed as a curator by the Smithsonian Institution. He filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on August 20, 1999, and received a discharge on December 1, 1999. Donald F. King was appointed as trustee. Although originally scheduled for September 17, 1999, the meeting of creditors was not held and concluded until October 1, 1999. Among the assets listed on the debtor's schedules, and claimed exempt, were $191,000 in a Thrift Saving Plan, a FERS retirement annuity valued at $10,700,[2] and an IRA valued at $100,000. The IRA was claimed exempt under Va.Code Ann. § 34–34.[3] Virtually

---

**1.** As originally filed, the objection also questioned the debtor's exemption of his Thrift Savings Plan and Federal Employees Retirement System ("FERS") annuity. At oral argument, however, the trustee conceded that both the Thrift Savings Plan and the debtor's right to receive an annuity under FERS are excluded from the debtor's estate under § 541(c)(2), Bankruptcy Code, and the Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). *See* 5 U.S.C. § 8470(a) (prohibiting assignment or attachment of FERS benefits); 5 U.S.C. § 8437(e)(2) (prohibiting assignment or attachment of sums in Thrift Savings Plan). Accordingly, the only remaining dispute is over the IRA.

**2.** It is not clear whether this represents the amount of the debtor's contributions or rather the actuarial value of the right to receive payments. Since FERS benefits are excluded from the bankruptcy estate in any event, the valuation issue is of largely academic interest. Part of the trustee's original objection arose because the debtor had confusingly claimed the FERS annuity exempt based on "sovereign immunity." The statutory basis having now been clarified, this issue is moot.

**3.** On Schedule C, the debtor also referred to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as a basis for the exemption. At oral argument and in his memorandum opposing the trustee's objection, however, the debtor

all of the debtor's other assets are either encumbered by liens or are exempt, with the result that the IRA is the only asset potentially available for the payment of creditor claims. On October 22, 1999, the trustee filed the objection that is currently before the court.

### Discussion

### I.

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Under 28 U.S.C. § 157(b)(2)(B), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge, subject to the right of appeal under 28 U.S.C. § 158.

### II.

■■■ Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an "estate" composed of all legal and equitable interests of the debtor in property. An individual debtor, however, may "exempt from property of the estate"—and thus retain, free from the claims of creditors—either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. § 522(b), Bankruptcy Code. A state is permitted, however, to "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has done precisely that. Va.Code Ann. § 34-3.1. Accordingly, residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general (nonbankruptcy) Federal law. *In re Smith*, 45 B.R. 100 (Bankr.E.D.Va.1984).

■■■ The state law exemptions available to Virginia residents are primarily set forth in Title 34 of the Code of Virginia. Relevant to the present controversy is Va. Code Ann. § 34-34, which provides a specific exemption for interests in a "retirement plan." The term "retirement plan" is defined as a plan, account, or arrangement that "is intended" to satisfy certain specified provisions of the Internal Revenue Code. Among these are 26 U.S.C. § 408, which governs the treatment of IRAs. Essentially, an individual may hold exempt in an IRA an amount (excluding contributions made in the two-year period preceding the claim of exemption) that would pay a benefit of $17,500 per year for life beginning at age 65. For the purpose of computing that amount, the statute includes a table setting forth, by attained age, the cost of a $1.00 annual benefit. Va.Code Ann. § 34-34(C). As an example, the table shows that the cost of a $1.00 annual benefit for a person aged 60 is $5.1150. Accordingly, the amount that could be held exempt would be $17,500 times 5.1150, or $89,512.50.[4] If a debtor has more than one "retirement plan," the aggregate amount that can be held exempt from all such accounts is the amount necessary to fund a $17,500 per year annuity. *Id.*

At issue in this case is the impact of the Virginia General Assembly's decision to amend

Va.Code Ann. § 34-34 in 1999[5] by adding subsection H:

A retirement plan established pursuant to §§ 408 and 408 A of the Internal Revenue Code is exempt to the same extent as that permitted under federal law for a qualified plan established pur-

---

made it clear that he is no longer relying on ERISA but solely on Va.Code Ann. § 34-34 for the exemption of his IRA.

**4.** This is purely an example. No evidence has been presented as to the debtor's age on the day he filed his bankruptcy petition.

**5.** Because the debtor's bankruptcy petition was filed after the effective date (July 1, 1999) of Va.Code Ann. § 34-34(H), the amendment clearly applies to the facts at hand.

suant to § 401 of the Internal Revenue Code.

However, an individual who claims an exemption under federal law for any retirement plan established pursuant to §§ 401, 403(a), 403(b), 409 or § 457 of the Internal Revenue Code shall not be entitled to claim the exemption under this subsection for a retirement plan established pursuant to § 408 or § 408 A of the Internal Revenue Code.

As noted, § 408 of the Internal Revenue Code governs IRA's. The thrust of the amendment is to give a debtor who has no other tax-qualified retirement plan the right to an unlimited IRA exemption but to deny the unlimited exemption to a person who is covered by such a plan. Although there is no formal legislative history, the reason why the General Assembly might have wished to confer such a benefit is not difficult to imagine. Employees who participate in a retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") are able, under the Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), to protect the entire value of their retirement in bankruptcy.[6] By giving a person who is not covered by an ERISA-qualified plan the right to an unlimited IRA exemption, such a person would be put on an equal footing with an employee who is a participant in an ERISA-qualified plan.

Although the general intent of the amendment seems clear enough, the actual wording presents a difficult problem of interpretation. The literal language of the amendment gives a right to an unlimited IRA exemption *unless* the debtor is a participant in (1) a "retirement plan" that is (2) "established pursuant to" certain speci-

fied section of the Internal Revenue Code, among them § 401. However, as will be discussed, a Federal Thrift Savings Plan account—while it is similar to, and for tax purposes is treated exactly like, a private employer 401(k) plan—is nevertheless not subject to all the regulations governing § 401(k) plans. The question is therefore whether, for the purpose of applying § 34–34(H), a Thrift Savings Plan account should be treated as a "retirement plan established pursuant to" § 401 of the Internal Revenue Code. If so, the debtor is not entitled to a further exemption for his IRA; otherwise, he may exempt it in full.

III.

The court is thus squarely confronted with the task of construing the language of Va.Code Ann. § 34–34(H). The rule in Virginia is that "where the language of a statute is free from ambiguity, its plain meaning is to be accepted[.]" *Portsmouth v. Chesapeake*, 205 Va. 259, 269, 136 S.E.2d 817, 825 (1964). Only when the words of the statute are not clear is the "legislative intent to be gathered from the occasion and necessity of the law, ... the causes which moved the Legislature to enact it." *Ambrogi v. Koontz*, 224 Va. 381, 386–87, 297 S.E.2d 660, 662 (1982). With respect to exemption statutes, the court must apply the plain meaning of the statute, and in particular, may not enlarge a statutory exemption and read into it an exemption the legislature did not intend to create. *See Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir.1984) (citing *Goldburg Co. v. Salyer*, 188 Va. 573, 582, 50 S.E.2d 272, 277 (1948)). On the other hand, the court must liberally interpret the Virginia exemption statutes in favor of the debtor, with any doubts to be resolved in favor of allowing the exemption. *See Tignor*, 729 F.2d at 981 (citing *South Hill Production Credit Assn. v.*

6. In *Patterson*, the Supreme Court held that the anti-alienation provisions of an ERISA-qualified plan constituted an enforceable restriction on alienation under § 541(c)(2), Bankruptcy Code. The result is that a debt-or's interest in an ERISA-qualified retirement plan, such as a 401(k) plan, is not property of the bankruptcy estate. *See In re Hanes*, 162 B.R. 733 (Bankr.E.D.Va.1994).

*Hudson,* 174 Va. 284, 6 S.E.2d 668 (1940) and *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 187 S.E. 449 (1936)); *In re Hayes,* 119 B.R. 86, 88 (Bankr.E.D.Va.1990) (Shelley, J.) (exemption statutes are to be "liberally construed so as to afford the relief which the legislature intended the debtor to enjoy"); *In re Perry,* 6 B.R. 263, 264 (Bankr. W.D.Va.1980) (Pearson, J.); *In re Williams,* 3 B.R. 244, 246 (Bankr.E.D.Va. 1980) (Shelley, J.).

As noted, before the debtor's participation in the Thrift Savings Plan can disqualify him from the unlimited IRA exemption, the court must find that it is (1) a "retirement plan" that is (2) "established pursuant to" § 401 of the Internal Revenue Code. The term "retirement plan" is defined by Va.Code Ann. § 34–34(A) as a "plan, account, or arrangement that *is intended to satisfy the requirements*" of certain Internal Revenue Code provisions, among them 26 U.S.C. § 401.

The Thrift Savings Plan is a tax-deferred retirement savings plan for Federal civilian employees established under the Federal Employees' Retirement System Act of 1986, 5 U.S.C. §§ 8401 *et seq.* The specific provisions governing the Thrift Savings Plan are set forth at 5 U.S.C. §§ 8432–8440. As an information pamphlet for Federal employees explains, the Thrift Savings Plan "offers Federal civilian employees the same type of savings and tax benefits that many private corporations offer their employees under so-called '401(k)' plans." Summary of the Thrift Savings Plan for Federal Employees at 2 (1992) (Debtor's Exh. 1); *See* S.Rep. No. 166, 1986 U.S.C.C.A.N. 1405, 1453 (Thrift Savings Plan "is patterned after those found among large employers in private industry."). But while the Thrift Savings Plan is analogous to a 401(k) plan, nothing in the enabling statute expressly requires that it "satisfy the requirements" of a 401(k) plan. The closest the statute comes

to assimilating the Thrift Savings Plan and 401(k) plans is in 5 U.S.C. § 8440, entitled "Tax treatment of the Thrift Savings Fund",[7] which provides in relevant part as follows:

(a) For purposes of the Internal Revenue Code of 1986—

(1) the Thrift Savings Fund shall be treated as a trust described in section 401(a) of such Code which is exempt from taxation under section 501(a) of such Code;

(2) any contribution to, or distribution from, the Thrift Savings Fund shall be treated in the same manner as contributions to or distributions from such a trust . . .

\* \* \*

(b) Nondiscrimination requirements.— Notwithstanding any other provision of law, the Thrift Savings Fund is not subject to the nondiscrimination requirements applicable to arrangements described in section 401(k) of title 26, United States Code, or to matching contributions (as described in section 401(m) of title 26, United States Code), so long as it meets the requirements of this section.

The trustee takes the position that Congress, by treating the Thrift Savings Plan for tax purposes in the same fashion as 401(k) plans, sufficiently equated the two for the purposes of applying Va.Code Ann. § 34–34(H). The debtor takes strenuous exception to that argument and points out that 5 U.S.C. § 8440 only governs the tax treatment of Thrift Savings Plan contributions and distributions. As the debtor correctly notes, not only does the enabling statute not mandate compliance with the "requirements" of § 401(k), it expressly exempts it from compliance with two of those requirements.

The trustee's argument ignores the words chosen by the Virginia General As-

---

**7.** Section 8440 is identical to 26 U.S.C. § 7701(j), which again explains the tax treatment of the Thrift Savings Fund, with the exception of additional paragraphs found under § 7701(j) that do not affect the court's analysis.

sembly. Those words are very precise. A debtor is entitled to an unlimited exemption in an IRA unless the debtor is a participant in, or beneficiary of, a plan that is "intended to satisfy the requirements of" and is "established pursuant to" certain specific sections of the Internal Revenue Code. In this connection, the court must assume that the General Assembly intended the phrase "established pursuant to" to have its normal, everyday meaning. *See In re Webb*, 210 B.R. 266 (Bankr.E.D.Va.), *aff'd*, 214 B.R. 553 (E.D.Va.1997) (referring to BLACK'S LAW DICTIONARY and WEBSTER'S to determine meaning of term used in exemption statute); *Bell v. Dorey Elec. Co.*, 248 Va. 378, 382, 448 S.E.2d 622, 624 (1994) (turning to BLACK'S LAW DICTIONARY and WEBSTER'S for the everyday meaning of terms of a statute). *See also Lumbermen's Mut. Casualty Co. v. Keller*, 249 Va. 458, 460–61, 456 S.E.2d 525, 526 (1995) (looking to BLACK'S LAW DICTIONARY and WEBSTER'S DICTIONARY for the everyday meaning of a term of an insurance policy). The operative word here is "established," which has been defined as follows: "To settle, make or fix firmly; place on a permanent footing; found; create[.] To enact permanently. To bring about or into existence." BLACK'S LAW DICTIONARY 546 (6th ed.1990) (citation omitted). In light of this definition, the Thrift Savings Plan plainly was not created, nor did it come into existence, under § 401.

Although the Thrift Savings Plan operates like, and enjoys the tax benefits of, a 401(k) plan, it is not a 401(k) plan and is not subject to all the "requirements" of a 401(k) plan. For whatever reasons, the General Assembly chose not to define "retirement plan" in such a way as to embrace, not only plans "established" under the enumerated sections of the Internal Revenue Code, but also plans *treated* for tax purposes like such plans. The trustee suggests that this omission is simply the result of poor legislative draftsmanship, and he urges the court to consider the manifest legislative intent to redress an inequity that arose as a result of *Patterson v. Shumate.* Specifically, the trustee argues that the court should not read the statute any more broadly than would be necessary to correct that inequity, and in particular, that the statute should not be read to allow an unlimited IRA exemption to anyone who is a participant in a tax-qualified retirement savings plan that is already accorded an unlimited exemption and that really is for all practical purposes a 401(k) plan even though not subject to all the requirements of a 401(k) plan.

It is of course possible that the General Assembly simply overlooked the issue of Federal employee retirement plans.[8] However, it is not for this court to usurp the role of the legislature by rewriting the statutory language to prevent what might seem under the particular facts of this case to be an overly-generous exemption. Statutes sometimes speak in generalities or contradictions, and where they do, it is unavoidable that courts will have to fill in the gaps in such a way as seems consistent with the overall framework of the statute. But where the statutory language is precise, as it is here, a court should tread most cautiously when asked to expand that language beyond its literal reading to embrace situations "almost like" what the statute describes. This is particularly true when the effect would be to limit an otherwise available exemption. Exemption statutes, as noted, are remedial

---

**8.** The debtor argues that there are a number of good policy reasons why the General Assembly might specifically have intended to allow Federal employees to enjoy an unlimited IRA exemption in addition to the unlimited exemption (arising under Federal law) of their Federal retirement accounts. While the asserted policy reasons are at least plausible, the court does not find any of them particularly persuasive, and instead concludes that the history and structure of the statute are insufficient to permit the court to determine with any confidence that the General Assembly either did or did not intend the particular result of this case. But given that the language of the statute is clear and precise, the court must assume that the General Assembly meant what it said.

in nature and broadly construed to effect their remedial purpose. Prior to the enactment of § 34–34(H), only a limited exemption was available in Virginia for IRA's. The statute plainly intended to expand that exemption. The ability of people to provide adequately for their old age is obviously a matter of great public importance, and it is certainly reasonable that the General Assembly would want, as a matter of sound public policy, to protect savings set aside for that purpose. Perhaps, as worded, the amendment goes farther than the General Assembly intended. But if so, the General Assembly has ample power to correct that problem by further amendment. Until it does so, however, the court is bound to apply the statute as written.

A separate order will be entered overruling the trustee's objection to the debtor's claim of exemptions.